Harman v. St. Louis.

HARMAN, *Appellant*, v. ST. LOUIS *et al.*

In Banc, February 9, 1897.

1. **Municipal Corporation:** NUISANCE: FAILURE TO ENFORCE ORDINANCE. A city is not liable for damages sustained by a property owner because it failed to prevent the erection of a wooden building on an adjoining lot, in violation of an ordinance.

2. **Pleading:** PETITION, SUFFICIENCY AGAINST DEMURRER. A petition which charges that defendants have erected and maintained a frame building, on lots adjoining a building owned by plaintiff, in violation of a city ordinance, and which is a public nuisance under such ordinance, and a constant menace to the safety of plaintiff's property, and the latter is damaged thereby, states a good cause of action for damages as against a demurrer.

*Appeal from St. Louis Circuit Court.*

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

*H. M. Post* for appellant.

(1) The city of St. Louis having failed to enforce the provisions of the ordinances recited in the petition became an accessory to the injury done to plaintiff and is jointly liable.   (2) "An unlawful act may be committed in violation of some express statute." "Where any law requires one to do any act for the benefit of another, or to forbear the doing of that which may be to the injury of another, though no action be given in express terms by the law for the omission or commission, the general rule of law in all such cases is that the party so injured shall have an action." 1 Hill, Torts [2 Ed.], p. 108; Moak, Underhill on Torts, p. 18; Cooley, Torts [2 Ed.], pp. 20, 21.

*W. C. Marshall* for respondent.

The city of St. Louis is not liable for failure, refusal, or neglect to enforce its ordinances enacted pursuant to its police powers. The city has power to establish fire limits within which wooden buildings can not be erected, and also power to require persons erecting buildings of any character to obtain a permit from the city so to do, because of its police powers, but this power carries with it no liability for failure to enforce it.   Dillon on Mun. Corp., secs. 145, 405, and cases cited in note 2; Tiedeman's Limitations of Police Power, sec. 122 E., pp. 438, 439, and cases cited in note 1; 15 Am. and Eng. Ency. of Law, p. 1154, par. 6, and the numerous cases cited in note 3; *Mathiason v. Mayer*, 90 Mo. 585.

ROBINSON, J.—This is an action to recover from the city of St. Louis and the other defendants (who are contiguous lot owners to plaintiff) damages caused to him by the erection and continuance of certain frame buildings adjoining his property in violation of the city ordinances, based upon the following petition:

"Now comes Henry Harman, the above named plaintiff, and by leave of court, first had and obtained, files this, his amended petition, in the above entitled cause.

"And for his amended petition plaintiff says that the above named defendant, the city of St. Louis, is a municipal corporation, organized and existing under the laws of the state of Missouri, and was so at the time of the circumstances set forth herein, and that the said defendants, Andrew Hoolan and Julia Hoolan are husband and wife.

"Plaintiff further states that he is the owner and in possession of a certain lot of ground in said city, having a front of twenty-five feet on the north line of Garfield avenue by a depth of one hundred and twenty feet, being known and designated as lot numbered 11 of city block numbered 1871 of said city, on which plaintiff has erected a brick dwelling house, at a cost of twenty-five hundred dollars, which plaintiff has heretofore rented to tenants, and received a large revenue therefrom.

"Plaintiff further states that said defendants Nannie Carroll, Bridget Carroll, Margaret A. Carroll, Andrew J. Carroll, Julia Hoolan, and Andrew Hoolan, and Mary Ann Carroll are the owners and in possession of a lot or lots of ground in said city block, immediately adjoining said lot owned by plaintiff, as aforesaid.

"Plaintiff further says that by provisions of sections 697 and 733 of article 3 of chapter 16 of the Re-

vised Ordinances of said city of St. Louis, it is unlaw-
ful for any person to erect or maintain any building in
said city without having first obtained a permit, author-
izing the same, from the commissioner of public build-
ings; and that by the provisions of sections 754, 756,
757, and 758 of said Revised Ordinances, being parts
of article 5 of chapter 16, it is made unlawful for any
person to erect or maintain any shed or wooden build-
ing or frame building within a certain part of said city
defined by said sections of said ordinances, in which
said part the lots owned by plaintiff, and the said de-
fendants, Carrolls and Hoolans are situated, without
having first obtained from said commissioner of public
buildings of said city a permit for the erection of such
building; and it is further provided in said sections of
said ordinances that no such permit shall be issued
unless the majority of the owners of the property in
the city block in which such building is proposed to be
erected, shall give their consent thereto in writing;
and that it is further provided by said sections of said
ordinances that within said part of said city, even with
the written consent of a majority of the owners of the
property in such block, no permit shall be issued for
frame sheds or stables larger in area than twenty by
thirty-five feet by sixteen feet high, and such as are
permitted, can only be erected on the rear of the lots.

"But plaintiff says that heretofore and subsequent
to the erection by plaintiff on his said lot of the brick
dwelling house above mentioned, said defendants Car-
rolls and Hoolans have unlawfully erected or caused or
suffered to be erected and now maintain on said ground
owned by them adjoining plaintiffs' said lot, a wooden
stable or building or buildings or shed or sheds, in vio-
lation of said sections of said ordinances, in that no
written consent to the erection of said building was
obtained from the majority of the owners of the prop-

erty in said block; in that no permit was obtained from the commissioner of public buildings for the erection of said building or buildings, and in that said building or buildings far exceed in dimensions the area prescribed by said ordinances for such building as under any circumstances might have been permitted on said ground, said building or buildings, erected by said defendants as aforesaid, covering an area more than twenty-five by thirty-five feet and extending to the front of the said lot or lots of ground.

"And plaintiff further says that said building or buildings, inasmuch as they are constructed entirely of wood and to a high and dangerous degree inflammable and combustible, are a public nuisance and a constant, menace to the safety of the property of this plaintiff, and the community at large.

"Plaintiff further says that it was and is the duty of the defendant, the said city of St. Louis, to enforce its said ordinances and to prevent the erection of said building or buildings on said premises of defendants Carrolls and Hoolans, and to cause their removal, after they had been erected.

"And plaintiff further says that he has repeatedly advised and notified the said defendant, the said city of St. Louis, through its proper officers and agents, of the said unlawful erection and maintenance of said building or buildings, and demanded that said ordinances be enforced, and that said building or buildings be removed; but that said city by its said officers and agents has wholly failed and neglected to enforce said ordinances, and prevent the erection or cause the removal of said wooden building or buildings, or to afford this plaintiff any remedy or relief whatever.

"And plaintiff says that by reason of the said wrongful and unlawful erection and maintenance of said building or buildings, by said Carrolls and Hoolans,

and the failure and neglect of said defendant, the city of St. Louis, to enforce said ordinances, and prevent the erection or cause the removal of said wooden building or buildings, plaintiffs said dwelling house has become tenantless, and is utterly undesirable as a place of residence, and that the intrinsic and market value of plaintiff's said lot and dwelling house has been greatly damaged, to wit: in the sum of $2,000 (two thousand dollars).

"Wherefore plaintiff prays judgment against said defendants Carrolls and Hoolans, and said city of St. Louis, in the said sum of two thousand dollars, with his costs in this behalf expended."

Defendant filed a general demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action.   The demurrer was sustained.   The appellant, plaintiff below, excepted, and elected to stand by his petition, and refused to plead further, and final judgment was rendered against him. The sustaining of the demurrer to his complaint and rendering of the final judgment against him are the errors assigned.

I.   The judgment of the court upon the demurrer as to the city of St. Louis, was obviously correct.   The idea that because the city of St. Louis has the right by virtue of its authority to make by-laws and pass ordinances relating to the public safety of its inhabitants, and has exercised that right by passing an ordinance prohibiting structures of a certain character to be built within certain districts therein defined, that therefore it must enforce the observance of said ordinances at the hazard of being subject to all damages which may ensue from its violation, is certainly as novel as it is startling.

While it is the duty of the city as of all governments to protect and preserve the rights of her citizens

as far as possible, and to provide and pass all needful laws and ordinances looking to that end and having those objects in view, the government does not guarantee to its citizens freedom from injury by the nonobservance, or by the positive infraction, of those laws or ordinances. If the city is to be held liable for the violated ordinance pleaded in this case, or for its nonenforcement, or for its failure to punish the violators, then every time the ordinances of the city prohibiting drunkenness on the streets are violated and an injury should befall a citizen by reason thereof, it would be liable for all damages occasioned thereby; or because it had passed an ordinance, under its police power, prohibiting the conveyance of high explosives at certain times of day in certain of its crowded streets, except in a certain approved way designated in the ordinances, and failed to enforce it against some lurking dynamiter for carrying a shell upon the prohibited streets and into some populous gathering where same was exploded, killing several of its citizens, the city would be liable in damages for all the consequences of the act because its officers had failed to discover the offender and to enforce the ordinance by staying the course of the miscreant before he reached the fated crowd, upon whom he perpetrated his mischief. And so for the neglect to enforce any or all of its police, health, and general welfare ordinances, thus becoming a gigantic insurance corporation, for all its citizens or those coming within its limits, against all the casualties incident to humanity or civil society.

This suit seems to be predicated upon the supposition that the city by acting in its corporate capacity in establishing what is known as the fire limits, and providing means by ordinances for the enforcement thereof, had contracted to secure plaintiff against the threat of danger from a frame building in his neigh-

borhood if he should build a brick house upon his premises.

This exercise of the power to restrict the building of frame structures in certain prohibited districts, or their entire prohibition in others, and in imposing and inflicting penalties for their infraction, is but one of the modes of exercising the power of government for the welfare of its citizens, and no more implies or embodies a contract to secure or insure plaintiff against the threat of actual danger of a frame building adjoining his brick structure, than a public act of our legislature forbidding the throwing of obstructions across the public highways or railroads of the state would insure or indemnify the citizens in the event of its violation, resulting to his injury. The same thing, the welfare of the citizen, is sought by both enactments, with the penalties attached for their violation.

II.   This court is of the opinion that the demurrer filed in behalf of the individual defendants should have been overruled; that while the petition is not as specific and definite as it should have been in stating how the erection, construction, and maintenance of the building by defendants on their own premises (declared "a public nuisance" by ordinance) was a constant menace to the safety of the property of the plaintiff, or why plaintiff's dwelling house "had become tenantless and utterly undesirable as a place of residence," and could have been properly reached and assailed by a motion to make it more definite and certain, that motion was not made, but a demurrer filed and the petition then stood, charging that the building as constructed and maintained "was a public nuisance by city ordinance and a constant menace to the safety of the property of plaintiff * * * and that by reason thereof plaintiff's said dwelling house has become tenantless and utterly undesirable as a place of residence, and that the intrin-

sic and market value of plaintiff's said lot and dwelling house has been greatly damaged," etc.

For the sake of the consideration of the demurrer filed herein, it stood as admitted that such was the character of the building erected by defendants, such its effect upon plaintiff's property and such the character of plaintiff's damages as set out in the petition. While the plaintiff in alleging that the building as constructed and maintained was a public nuisance, etc., and also in alleging that his dwelling house had been made tenantless by reason thereof, was stating in both instances a conclusion to be drawn from facts that should more properly have been set out in the petition, the statements were unchallenged as made, and as such in the treatment of defendant's demurrer we must consider them, and, so treating and considering them, we are not of the opinion that, with the allegations of the petition all admitted as true, no right of plaintiff has been violated by the individual defendants herein; that as the fire limit ordinance, mentioned in plaintiff's petition, prohibiting the erection and maintenance of frame or wooden structures of the dimensions of the one constructed by defendants on their premises, was for the benefit of plaintiff and all others in the fire limit districts, he has his remedy for the wrong done that is peculiar to himself, by anyone violating the ordinance.

The judgment of the circuit court sustaining the demurrer as to the defendant, the city of St. Louis, is affirmed. As to the individual defendants the judgment of the circuit court is reversed and the cause remanded with directions that the circuit court make an order overruling the demurrer. BARCLAY, C. J., GANTT, J., BURGESS, J., MACFARLANE, J., and BRACE, J., concur. SHERWOOD, J., concurs in paragraph 1 and dissents as to paragraph 2.