SALLEE v. CITY OF ST. LOUIS, Appellant.

Division One, December 12, 1899.

152 615
91a 496

1. **Damages**: EVIDENCE. When the witness is familiar with the use and value of such commonplace things as a wagon, horse and harness and it is evident from the context that the question as to "what was the amount of damage done to the wagon and harness" was meant to be an inquiry as to the cost of repairing them, there is no substantial error in admitting the question in that form, nor his answer of "about $33."

2. ———: ORDINANCE: CITY'S LIABILITY UNDER. A municipal corporation can not be held liable in a civil suit for failure to enforce its own ordinance relating to the exercise of its police powers.

3. ———: ———: ———: EVIDENCE. But the admission of such an ordinance in evidence in the civil suit, if plaintiff has otherwise made out a complete case of negligence on the part of the city, and the ordinance could not have prejudiced the defense, is nothing more than harmless error.

*Appeal from St. Louis City Circuit Court.*—Hon. SELDEN P. SPENCER, Judge.

AFFIRMED.

B. SCHNURMACHER, CHARLES CLAFLIN ALLEN and ALEXANDER NICHOLSON for appellant.

(1)   The court erred in permitting plaintiff to testify to "the amount of damage done" to his horse and wagon, in response to a question to that effect put by his counsel.   It was for the jury, or court sitting as a jury, and not for the witness, or the witnesses, to determine the amount of damage.   The witnesses should be confined to testifying to facts; they may be permitted to state values, and even to express opinions on values, but they should never be permitted to testify to the amount of damage.   This is the peculiar province of the jury. Spencer v. Street Ry., 120 Mo. 159; Belch v. Railroad, 18 Mo. App. 85; White v. Stoner, 18 Mo. App. 548; Watkins v. Railroad, 44 Mo. App. 248.   (2)   The court erred in permitting plaintiff to offer and read in evidence the ordinances of the city of St. Louis in relation to the removal of dead animals from the city streets.   These ordinance provisions were incompetent as against the city of St. Louis for a municipal corporation can not be held liable for a non-enforcement or disregard of its ordinances.   Dillon's Mun. Corps., sec. 950; Harmon v. St. Louis, 137 Mo. 499; Butz v. Cavanaugh, 137 Mo. 510.

W. M. KINSEY for respondent.

(1)   Plaintiff's testimony as to the amount of damage to his wagon and harness, and the reasonable cost of repairing the same, was properly admitted after he had shown himself to be fully acquainted with all the facts bearing on that question, and to have on former occasions procured breaks of similar character to be repaired.   Railroad v. Calkins, 90 Mo. 543;

Railroad v. DeLissa, 103 Mo. 130. (2) If the ordinance provisions of the city of St. Louis relating to the removal of dead animals be eliminated from plaintiff's statement, there still remains the statement of a complete cause of action against appellant, which was correctly tried upon its own theory. Badgley v. St. Louis, 149 Mo. 122. (3) If the admission in evidence of the ordinance provisions relating to the removal of dead animals was error, as claimed, still, the error was harmless, since the court tried the case upon a theory which excluded their consideration, and held appellant liable for not having removed the obstruction in its public street within a reasonable time after notice, as alleged in plaintiff's statement.

VALLIANT, J.—This suit was instituted before a justice of the peace against the city of St. Louis and one Hellstern to recover damages which plaintiff claims to have sustained in injuries to his person and in the breaking of his buggy and harness and injury to his horse, occasioned as he asserts by the negligence of the defendants in suffering a dead horse to remain in one of the public streets of the city, which frightened plaintiff's horse, causing it to run away.

Upon the trial before the justice there was a verdict for the defendant Hellstern, and for the plaintiff against the city for $62.45, from which the city appealed to the circuit court; there was no appeal by the plaintiff from the judgment of the justice in favor of defendant Hellstern. When the cause reached the circuit court plaintiff filed an amended statement in the form of a regular petition, stating a cause of action against the city alone.

Upon the trial in the circuit court the testimony on the part of the plaintiff tended to show that about 2 o'clock in the afternoon of April 18, 1895, a horse belonging to Hellstern died on Michigan avenue, one of the public streets of the city, and Hellstern went immediately to a police station and re-

ported the fact; it was also reported by a policeman on the beat to his sergeant, about ten o'clock that evening. On the evening of the next day, about eight o'clock, the plaintiff was driving in Michigan avenue, it was dark and he drove upon the dead animal, the mare he was driving reared up and jumped to the right, her front feet over the carcass, the buggy was thrown against the curb, turned upside down, the mare went down on the sidewalk, she freed herself after breaking the wagon and harness, and got away. Plaintiff was thrown out, his hip bruised and he was confined to his home three or four days and had a doctor to attend him; the testimony also tended to show damage to his person and property to the amount recovered. Bearing on the question of damages, was the following, by the plaintiff:

"Q. Well, now, tell the court what condition your wagon was in after the mare broke loose from it? A. Well, the wagon was completely wrecked. The springs were broke, the axles bent, and the front end of the box was broke out, and the sides in underneath the box was broke. The braces were broke, the seat was broke, and the cross-pieces of the shaft were broke, and quite a number of other articles too numerous to mention.

"Q. The harness? A. A new set of harness I had just purchased, didn't have it but about a month, it was pretty well broken up.

"Q. Did you have the wagon repaired? A. Yes, sir.

"Q. What did you expend for that?

"Defendant objected, and objection sustained.

"Q. What was the amount of damage done to the wagon and harness?

"Counsel for defendant objected, as calling for a conclusion. Objection overruled, exception taken.

"A. Somewhere in the neighborhood of $33.

"Counsel for Defendant: I ask that that be stricken out

unless he shows, of his own knowledge, that he knows what was the reasonable value of such work."

Further questions and cross-questions elicited from the witness that he had never had just such a wagon broken in that particular way before, and repaired, but that he had used such a wagon for a long time, and had frequently had repairs of broken parts made, and in that way learned the cost of such work, and then, in answer to a question, stated that the reasonable cost to repair the wagon was from $28 to $30, and the harness from $3.25 to $4, to which defendant's counsel objected.

Plaintiff then read in evidence over the defendant's objection the city ordinance in relation to the removal of dead animals from the streets, from which it appears that the work is to be performed by a person who has contracted with the city to do so, and every one else is forbidden to interfere unless by express permit, and the contractor is required under penalty to remove the carcass within six hours of daylight after being notified. The ordinance is long, covering not only the matter of contract, but the mode of removal and disposal of dead animals, and safeguards to the public health, etc., which is unnecessary to set out here.

The defendant offered no evidence. The cause was tried by the court, jury waived and resulted in a finding and judgment for plaintiff for $105.50, from which the defendant city after due course has prosecuted this appeal.

There are two assignments of error insisted on in the brief of appellant, first, permitting plaintiff to testify to "the amount of damage done" to the wagon and harness; second, admitting the ordinance in evidence. The alleged errors in overruling the motions for new trial and in arrest, are covered by the two assignments above specified.

I. The part of the testimony on the subject of the plaintiff's damages appellant deems incompetent is contained in this question and answer: "Q. What was the damage done

to the wagon and harness? A. Somewhere in the neigh-
borhood of $33." If that was all of that witness's testimony
in that connection, the objection would be valid. In an action
sounding in damages it is not competent for a witness to state
the sum which he thinks is the plaintiff's damage, because,
even if the witness is expert in the particular subject, he is
liable to include in his general estimate elements of damage
which the law does not recognize. As said by ELLISON, J., in
White v. Stoner, 18 Mo. App. loc. cit. 549, "Damage is a
word of quite broad signification in the minds of many who
are not familiar with the rules of law, confining its compen-
satory character to its proximate cause. A witness stating
what the damage is in a given case, is in too broad a field of
individual conjecture for the safety of justice under the forms
of law." And as this court said per BURGESS, J., in Spencer
v. Metropolitan Street Ry. Co., 120 Mo. loc. cit. 159, "To al-
low a witness to give his opinion as to the amount of damages
sustained in any given case is as a general rule usurping the
province of the jury." But in dealing with subjects of this
kind, we should not give too much weight to the form of ex-
pression if the meaning is otherwise clear. It is competent
for a witness when he is shown to have had sufficient experi-
ence with the subject to enable him to form an intelligent
opinion, to give his opinion to the jury, for what it is worth,
on the question of value. The controversy here was in rela-
tion to the extent of the injury to the wagon and the reason-
able cost of repairing it. It is a commonplace subject, not
calling for expert testimony of a very technical character, and
not uncommon in the ordinary experience of mankind. The
question and answer objected to did not constitute the whole
of the witness's testimony on that subject, but it followed his
minute description of the condition of the wagon after the
accident, and although the word damage was used, yet it is
plain that when he said the damage to the wagon and harness
was about $33, he meant that it would cost that much to make

the necessary repairs. The cost of the repairs was a legitimate element of damages in this case. When the objection was interposed it was not on the ground that the witness had not shown that he had sufficient experience to give an opinion on that subject, but it was that he was asked to state a conclusion. It was not until after the witness had stated the amount of the damage, that the counsel for the defendant raised the question as to the qualification of the witness. The objection then came in the shape of a motion to strike out, unless the witness was shown to be expert. Then followed questions and cross-questions on that subject. In answer to which the witness showed that he had had sufficient experience to justify the admission of his evidence. This question was then put to the witness: "What is the reasonable cost of repairing a broken wagon, broken such as yours was? A. The reasonable cost would be $28 or $30." Other testimony as to the amount of damages sustained, to which there was no objection, tended to show, that plaintiff's mare was depreciated in value from $50 to $75, that plaintiff was himself confined to his house with a bruised hip three or four days. The court awarded the plaintiff $105.50. The items making up the amount were not specified, but if the court awarded the plaintiff $30 for his wagon, $0.50 for his harness, $50 for his horse, and $25 for his own injuries it would make up the amount, and the verdict would be well sustained by the evidence. There was no substantial error in the court's ruling on the admission of evidence.

II. The defendant's objection to the admission of the ordinance in evidence should have been sustained. There was one section of the ordinance, that one making it the duty of the contractor to remove the dead animal within six hours of daylight after being notified, was competent for one purpose, that is, as bearing on the question as to a reasonable time within which the city should cause the nuisance to be removed. But all the rest of the ordinance was irrelevant to the case. If

the city was not otherwise liable to the plaintiff for the injuries complained of, the ordinance did not make it so. A municipal corporation can not be held liable in a civil suit for failure to enforce an enactment of its own, made in its legislative capacity, having reference to the exercise of its police powers. [Harman v. St. Louis, 137 Mo. 494; Butz v. Cavanaugh, Ib. 503.]

But this ordinance only tended to show that the city had undertaken to do that which it was bound under the law to do. The fact that the ordinance prohibited any one except the contractor to interfere in the matter, neither added to nor took from the character of the city's obligation. The law makes it the absolute duty of the city to remove the nuisance within a reasonable time, and holds it liable for damage resulting from neglect of that duty. Therefore, the admission of the ordinance in evidence was not only irrelevant, but absolutely immaterial and could not possibly have prejudiced the defense.

The finding and judgment of the court were unquestionably for the right party, and there was no error committed materially affecting the merits of the action.

The judgment of the circuit court is affirmed.

BRACE, P. J., and ROBINSON, J., concur; MARSHALL, J., not sitting, having been of counsel.