226 S.W.2d 376 (1950)
VON DER HAAR
v.
CITY OF ST. LOUIS.
No. 27709.
St. Louis Court of Appeals, Missouri.
January 17, 1950.
Motion for Rehearing or to Transfer to Denied February 17, 1950.
*377 James E. Crowe, St. Louis, Harry R. Stocker, St. Louis, John P. McCammon, St. Louis, for appellant.
Everett Hullverson, St. Louis, Forrest Boecker, St. Louis, of counsel, for respondent.
Motion for Rehearing or to Transfer to Supreme Court Denied February 17, 1950.
McCULLEN, Judge.
This suit was brought by respondent as plaintiff against the City of St. Louis as defendant to recover damages for personal injuries alleged to have been caused by the negligence of defendant. A trial before the Circuit Court and a jury resulted in a verdict and judgment in favor of plaintiff in the sum of $6500. Defendant duly appealed.
The petition of plaintiff alleged that defendant, a municipal corporation, on or about March 12, 1948, was engaged in making an excavation in its street at the intersection of Tennessee and Eichelberger Avenues and had a wooden barricade at said place which was unlighted, and plaintiff while operating his automobile westwardly on Eichelberger Avenue was caused to come into contact with the barricade as a direct result of the negligence of defendant in the following respects: That defendant negligently failed to place lanterns at a place where the street was closed off; negligently failed to light lanterns at night time at said place; negligently failed to inspect said place for the purpose of determining whether or not lighted lanterns were in place during the night hours at said place; negligently failed to provide any means to warn persons using the public street of said conditions; that defendant by reason of the aforesaid conditions failed to provide members of the public, and particularly plaintiff, with a safe place in which to travel on said public street; that defendant by reason of all the things aforesaid created and maintained a public nuisance.
Plaintiff further alleged in his petition that as a direct result of defendant's negligence as aforesaid he sustained numerous serious and permanent injuries which were described in detail; that he lost wages and earnings and will in the future lose wages and earnings; that he became obligated, and in the future will become obligated, for medical attention; that he has suffered, and will suffer pain, and that his automobile was damaged.
The answer of defendant admitted that it was a municipal corporation and denied all the other allegations in plaintiff's petition as amended. Defendant's answer also pleaded contributory negligence on the part of plaintiff alleging that plaintiff failed to exercise the highest degree of care for his own safety in failing to drive his automobile in a careful and prudent manner at the time mentioned; failed to use his eyesight and other senses to discover and avoid the alleged condition of the street mentioned in plaintiff's amended petition; that plaintiff knew of the alleged condition of the street at the place described in his petition, or by the exercise of ordinary care for his own safety would *378 have known thereof, and could have avoided the alleged injuries, but negligently failed to do so.
The answer of defendant further alleged that the work in which it was engaged at the time mentioned was sewer and street maintenance of the City of St. Louis which was a governmental function and that defendant cannot be held liable for negligence in connection with the exercise of such a function.
Plaintiff testified that on the night in question he was driving his automobile westwardly on Eichelberger Avenue toward Tennessee Avenue with the lights on his car burning; that he was driving at a speed of between 20 and 25 miles per hour; that he saw the barricade, also referred to by the witnesses as barricades, at the intersection of Tennessee and Eichelberger when he was about 10 to 15 feet away from it; that there were no lights on the barricade; that the barricade was beyond the center of Tennessee, and near the center being a little to the right of the center of Eichelberger; that he swung his car to the left or south in an effort to avoid striking the barricade, but the car struck the barricade and proceeded on down Eichelberger, the left front wheel going over a curb and the car struck the second tree on the left side of Eichelberger, west of the intersection of the two streets; that his head went through the windshield as he struck the tree; that he was knocked out temporarily and when he came to there were present a man and a girl; that after he got out of his car and looked around he saw some lanterns there.
Plaintiff further testified that his brakes were new and in good condition at the time of the accident; that he saw the barricades when his lights struck them; that the general lighting condition at the intersection of the two streets was about normal; that there was some ice on the pavement and his car skidded and he applied his brakes; that there was some chat on the pavement near the sewer opening where the barricade was located.
The testimony shows that the police arrived shortly after the accident and took plaintiff to the City Hospital where he remained from Friday night through the following Monday; that plaintiff had some broken ribs on the right side, a broken nose and some teeth knocked loose; three of his teeth were still loose at the time of the trial. Plaintiff's right knee hit the radiator or heater and still gave him trouble at the time of the trial.
Plaintiff testified that his back bothers him in lifting; that he had headaches for a week or ten days, but they didn't bother him too much any more; that it was three weeks before he returned to work. At the time of the accident plaintiff was making $55 per week and at the time of the trial was earning $98 a week.
Wedell Eugene Thomure, a witness on behalf of plaintiff, testified that on the night in question he was working for Rupprecht Service Station and received a call to get plaintiff's car at the scene of the accident and went there between 12:30 and 1 A.M., about an hour after the accident occurred; that he had seen the barricade at the point of the accident between 10:30 and 10:45 o'clock on that night before the accident occurred; that there were no lighted lanterns on the barricade at that time, but he did not know whether unlighted lanterns were then on it; that he had noticed that two nights before there were no lights on the barricade, but that he avoided striking it; that when he arrived at the scene of the accident on the night it occurred, plaintiff's car was against the second tree west of the west curb of Tennessee on Eichelberger. He testified further that two or three nights before he had seen another three or four laterns hanging on the barricades but they were not lighted.
Frederick Breithaupt, a witness for plaintiff, testified that about 8:30 on the evening of the accident he saw the barricade with lanterns on it, but the lanterns were not lighted; that the night before the accident the lanterns were not lighted. The witness further testified that if a person were looking for the barricade it could be seen for a half block; that the headlights show that far; that he saw at least *379 one, and possibly four, unlighted lanterns on the barricade.
John William Werner, Jr., testified as a witness for plaintiff that about 9:30 on the evening of the accident he passed the place where the accident later occurred; that he was in an automobile and almost ran into the barricade; that he had what he called "a close call"; that he got out of the car he was riding in and saw the barricade with lanterns on it, but the lanterns were not burning; that he got out to light the lanterns and found there was no coal oil in them; that he stopped within ten feet of the barricade; that later in the evening about 11:30 he, his wife, his brother and his brother's girl friend were in his brother's automobile on their way to get some hamburgers, and they heard the bang when plaintiff's automobile hit the barricade and the tree, and the witness went up to help plaintiff out of his car. The witness testified that he stayed until the police officer arrived and he helped the police pick up the lanterns and the barricade; that there was no coal oil spilled on the street; that he had seen the lamps at 9:30 that evening and there was no coal oil in them then; that the barricade was about 3 or 3½ feet high; that there were four lanterns and none of them were lighted; that he shook them and turned them upside down to see if there was coal oil in them and found all four lanterns empty.
Plaintiff testified at length concerning his injuries. Dr. Richard J. Arnold, a dentist, gave testimony describing plaintiff's injuries. Dr. F. G. Pernoud also testified concerning plaintiff's injuries.
Defendant presented a number of city employees as witnesses whose testimony, summarized, was to the effect that there had been a washout around the sewer opening at the corner of Eichelberger and Tennessee Avenues and that the pavement at that point had broken and sunk; that the City Sewer Department had made repairs and filled in the street at that point; that it was necessary to let the surface settle at the filled-in place before replacing the pavement; that the pavement in the immediate vicinity was covered with chat and wooden barricades were erected and four lanterns placed on the barricades; the lanterns had an oil capacity sufficient to keep them burning 72 hours; that the lanterns were inspected, filled and replaced from time to time, the last time being on the 12th of March, the day of the accident; that they were inspected by city employee Kaslick on the morning of March 12th and Wessel J. Charlton, another city employee, was ordered to service them on that date; that on March 12, at about 2 P.M., Charlton, in obedience to Kaslick's order, went to the point of the accident to service the lanterns; that he put up four fresh lanterns full of kerosene and left them burning at 2 P.M.; that they were cleaned and full of oil.
Police Officer Neiman testified that he reached the scene of the accident shortly after it occurred and found that the barricades were broken and that two of the lanterns were smashed up and flattened out and one of them had the glass broken out; that they didn't have any oil in them because the base had been flattened out but they were wet with oil; that the ordinary street lights of the city were on; that the night was cold, the street was icy. The police officer further testified that on the morning of the 12th of March, about 4 or 5 o'clock, he had found four of the lights on the barricade were burning.
Kenneth Clyde Kurtz, an employee of the City Lighting Division, Department of Public Utilities, testified that the records showed that the street lights at the point where the accident occurred were burning on March 12, 1948; that he made a lighting test at that point at 11:25 P.M. on October 14, 1948; that the tests were made both with and without automobile lights burning; that with the street lights and automobile lights burning, the light at the intersection was good enough to read a newspaper; that with the automobile parked 33 feet east of the curb of Tennessee the reading of the meter was 125/100 of a foot candle; that 5/100 of a foot candle is considered adequate for street illumination; that without the automobile headlights, the reading was 75/100 of a foot candle.
*380 Defendant contends that the court committed error in permitting plaintiff to read in evidence over defendant's objection Section 2323 of the Ordinances of the City of St. Louis. Plaintiff offered said ordinance "as evidence of common law negligence with regard to excavations." The ordinance is lengthy and need not be set forth here in full. It is sufficient to say that it provided that every person who shall cause any public street to be excavated or obstructed shall cause the excavation to be fenced in with a substantial fence not less than three feet high and so placed as to prevent persons or vehicles from falling into said excavation and shall provide red lights to be posted on or near such excavation and "shall keep such red lights burning during the entire night." It appears from the record that the ordinance in question had been pleaded by plaintiff but had been struck out of plaintiff's petition on the motion of defendant. In support of its contention defendant cites the case of Bean v. City of Moberly, 350 Mo. 975, 169 S.W.2d 393.
The Bean case, supra, relied on by defendant, was a suit in which it was shown that the plaintiff fell into a ditch in the City of Moberly and was injured. In improving and resurfacing certain streets in connection with the relaying of a sewer line a ditch was dug by the City in a parkway between the sidewalk and the curbline of Rollins Street in said city. The plaintiff recovered a judgment against the City of Moberly for his injuries and the City appealed to the Supreme Court where the judgment was reversed and the cause remanded. In the Supreme Court the City tacitly conceded that plaintiff's evidence justified a finding that the City had breached its common law duty to exercise due care in the maintenance of its ways, but argued that the plaintiff had been guilty of contributory negligence as a matter of law. The Supreme Court held that a city is not civilly liable for failure to enforce its ordinances or to observe the requirements thereof though they may become a standard of care and a measure of liability so far as the conduct of the members of the general public are concerned.
It was also held in said Bean case that municipalities are not liable for breaches of duty respecting their governmental function as in the enactment and enforcement of ordinances; that the City's obligation is to use reasonable care to maintain its streets and sidewalks in a reasonably safe condition and if it does not do so, it may be guilty of breach of its common law legal duty to some member of the public and, therefore, negligent. Following the above holdings, the Supreme Court went on to say: "On the other hand, municipalities are not liable for a breach of duty with respect to their governmental functions (38 Am.Jur., Sec. 572; Richardson v. Hannibal, 330 Mo. 398, 50 S.W.2d 648, 84 A.L.R. 508) and the enactment and enforcement of ordinances is a governmental function. 6 McQuillin, Municipal Corporations, Sec. 2802; 38 Am.Jur., Secs. 602-604. Consequently, it has become definitely settled that a city is not civilly liable for failure to enforce its ordinances. Kiley v. City of Kansas City, 87 Mo. 103, 56 Am.Rep. 443; Harman v. City of St. Louis, 137 Mo. 494, 38 S.W. 1102; Sallee v. City of St. Louis, 152 Mo. 615, 54 S.W. 463; Salmon v. Kansas City, 241 Mo. 14, 145 S.W. 16, 39 L.R.A.,N.S., 328. By the same reasoning tort liability cannot be imposed on a municipality for failure to observe the requirements of its own ordinances (4 Dillon, Municipal Corporations, Sec. 1629) even though the ordinances may become the standard of care and the measure of liability so far as the conduct of members of the general public are concerned." Bean v. City of Moberly, 350 Mo. 975, 982, 169 S.W.2d 393, 397. (Emphasis ours.)
Plaintiff herein cites a number of cases in an effort to show that the Bean case, supra, is not applicable to the case at bar. Plaintiff points out that in this case a number of witnesses gave testimony which showed beyond question that the City did not have red lanterns burning on the barricade at the time of the accident. Plaintiff states in his brief that "This is a case in which the negligence alleged was failure to have barricades at the place of the street obstruction illuminated by red lanterns at the time of the accident"; that *381 "the issue is whether the City fulfilled its obligation to use ordinary care when it suffered the barricade to be in place at night with the lanterns not illuminated"; that "As bearing upon this issue the ordinance was certainly pertinent since it described the standard of care which the city itself understood should be applied under such circumstances." Plaintiff further argues that the city ordinance being pertinent to the issues in the case, it was proper to read it in evidence against the City even though such ordinance could not be made a foundation for the City's liability. In support of these arguments plaintiff cites a number of cases which we have read with care. However, we do not find that any of said cases support plaintiff's contention although some of them do hold that it was not error to admit in evidence a city ordinance under the particular facts of such cases. Such holdings, however, were based on a showing that the ordinance had a bearing on some issue made by the pleadings in the case. We have no such showing in the case at bar.
In the case at bar, plaintiff concededly relied for recovery on defendant's common law negligence alone. Plaintiff's plea in his petition of negligence under the ordinance had been struck out. Hence, there was no issue of negligence under the ordinance in the case. Nor was there any issue as to which the ordinance could properly be used as evidence. Nevertheless plaintiff was permitted to introduce the ordinance which specifically provided that "red lanterns" should be kept "burning" on the barricade "during the entire night." Under the decision in the Bean case, supra, we must hold that the admission of the ordinance was prejudicial error.
The ordinance prescribed a specific standard of care quite different from and higher than the standard of care required by the common law under the circumstances involved. Under the common law the duty of the City was to exercise "ordinary care" to keep its streets and sidewalks in a "reasonably safe condition" for use by the public. The test to determine whether or not the City exercised such ordinary care was whether or not a reasonably prudent person under the same or similar circumstances would have done or failed to do what the City did or failed to do in performing its duty to exercise "ordinary care" to avoid injury to persons using the streets. The ordinance in question specifically required that red lanterns be kept burning on the barricade during the entire night without regard to whether or not the City had exercised "ordinary care" by putting up the barricade and providing light from other sources such as the ordinary street lights, to make the place reasonably safe for one exercising proper care for his own safety. The standard of care provided by the ordinance did not permit the jury to take into account the facts that the barricade plus the headlights of plaintiff's own car might, together with the regular street lights, have been deemed sufficient to show that defendant had exercised "ordinary care" to keep the street reasonably safe. Even though the jurors may have believed that the City had exercised such ordinary care they were required under the ordinance, and an instruction to which we shall refer later herein, to give plaintiff a verdict solely because they also believe that there were no red lanterns burning on the barricade at the time of the accident.
Since negligence under the ordinance was concededly not involved in the case the ordinance should not have been admitted in evidence. Plaintiff contends that the ordinance was admissible "as tending to show the negligence on which the plaintiff relies, that is, the common law negligence in failing to use ordinary care to keep the warning lanterns lighted". We are unable to agree with plaintiff's contention in this respect. Defendant's common law duty did not require it to keep "warning lanterns lighted." Its common law duty required it to exercise ordinary care to keep its street in a reasonably safe condition for the use of the public. It was the improperly admitted ordinance which required specifically that the warning lanterns be kept lighted. By permitting the introduction of the ordinance in evidence the court placed the burden on the City to *382 show that it complied with a standard and degree of care that were not only higher than the common law required but were not involved in the case at all because plaintiff concededly relied on common law negligence only, and not on negligence under the ordinance.
Interwoven with the error in admitting the above mentioned city ordinance in evidence was instruction No. 1 given at the instance of plaintiff. Said instruction told the jury that if they found from the evidence that the City had excavated a portion of the street and had erected barriers over said place, it then became defendant's duty to exercise ordinary care to see that persons operating automobiles there in the night time would be warned of the condition including the said barriers "and if you find that defendant failed to provide lanterns there and to keep them lighted in the night time and was thereby guilty of negligence" and further that if the jury found that plaintiff's automobile collided with said barriers by reason of such negligence, if any, and that plaintiff was injured as a direct result thereof, then plaintiff was entitled to recover and the verdict should be in favor of plaintiff. It will thus be seen that if the jury found that defendant had failed to provide lanterns and to keep them lighted in the night time, they were authorized to find a verdict for plaintiff. This was erroneous because the standard of care, namely, to keep lanterns burning in the night time was the standard of care required by the ordinance whereas plaintiff's case was not based on negligence under the ordinance, but on common law negligence.
It will be observed that the instruction imposed upon the defendant an absolute duty to keep the lanterns on the barricade burning during the night time. This was a much higher and greater duty than the common law required under the circumstances. Plaintiff seeks to escape the effect of the instruction by arguing that the requirement to keep the lanterns lighted was followed by the requirement that such failure must be found to constitute negligence in order to be actionable. We are unable to agree with that view. Under the common law, as distinguished from the ordinance, there is no specific, absolute requirement that such lights be kept burning during the night.
It is conceivable that a city could be held liable under the common law for failure to keep a light or lights burning on a barricade in a street during the night. It would depend on the facts of the particular case showing whether or not the exercise of "ordinary care" required the City to keep such lights so burning. However, the liability of the City would then be based on its failure to exercise "ordinary care" and not on its failure to comply with the absolute, specific terms of the ordinance.
The instruction in question, coupled with the erroneous introduction of the ordinance in evidence, gave plaintiff the advantage of having the case tried and determined on the theory that defendant could be found guilty of negligence under the test of the ordinance, whereas negligence under the ordinance had been struck out of plaintiff's petition and was not involved in the case. There is nothing in the record to show that plaintiff objected to the court's action in striking out his plea of negligence under the ordinance. Furthermore, plaintiff does not contend in this court that such action of the trial court was erroneous.
Inasmuch as our Supreme Court held in the Bean case, supra, under facts similar to those in the case at bar, that such an ordinance was not admissible in evidence as the measure of the City's standard of conduct and substantive liability, it becomes our plain duty under Article V, Section 2 of the Constitution of Missouri, Mo.R.S.A., to follow said decision of the Supreme Court. This conclusion makes it unnecessary for us to discuss other points raised by defendant.
We hold that the trial court erred in admitting in evidence the ordinance in question and in giving instruction No. 1. Because of these errors, the judgment is reversed and the cause remanded.
ANDERSON, P. J., and HUGHES, J., concur.