[Civil No. 3734. Filed February 16, 1937.]

[64 Pac. (2d) 1249.]

CENTRAL ARIZONA LIGHT & POWER COMPANY, a Corporation, Appellant, v. LULU E. BELL and CLARENCE H. BELL, Her Husband, Appellees.

Messrs. Armstrong, Kramer, Morrison & Roche, for Appellant.

Mr. George F. Macdonald and Mr. Frank W. Beer, for Appellees, and Mr. William G. Christy, of Counsel.

McALISTER, C. J.—This is an appeal by the Central Arizona Light & Power Company from a judgment in favor of plaintiffs, Lulu E. Bell and Clarence H. Bell, her husband, for damages for injuries suffered by the former as a result of an explosion of gas in a cooking stove.

The second amended complaint on which the case was tried alleges that for many years prior to January 1, 1934, the defendant, pursuant to an exclusive franchise, had furnished the citizens of Phoenix, Arizona, artificial gas and that it decided some time before that date to change its service to natural gas. Before doing this, however, it notified its gas consumers in Phoenix that it would make the changes in its equipment the use of natural gas rendered necessary and would, in addition, prepare their gas appliances so that natural gas could be properly and safely used by them for all purposes.

Following these averments the plaintiffs allege:

That they received and relied on the notice given by the defendant that it would make the changes in their gas appliances the use of natural gas necessitated, but, notwithstanding these promises, "defendant care-

lessly, negligently and without regard to the rights of the plaintiffs as its consumers, wholly failed, neglected and refused to prepare said domestic appliances used by plaintiffs, or the lines and equipment of defendant corporation which regulated and governed pressure and flow of its said gas to facilitate the safe use by plaintiffs of defendant's said natural gas," though such careless and negligent acts were not discovered by plaintiffs until about the 15th day of January, 1935. (Paragraph V.)

That natural gas was substituted for artificial gas on January 15, 1934, and that two months later, and at various times thereafter, the plaintiff, Lulu E. Bell, notified defendant at its principal place of business in Phoenix that

"said natural gas was not being safely or properly delivered to their said premises, in that due to uneven pressure or some reason not apparent to the said plaintiffs, the flame of said natural gas was irregular, and that on many occasions, the same would become extinguished allowing large amounts of said gas to escape in the rooms of plaintiffs' home,"

but, notwithstanding this notice, defendant failed, refused and neglected to remedy same. (Paragraph VI.)

That while plaintiff, Lulu E. Bell, was using defendant's natural gas in her cook stove at her residence on January 1, 1935,

"a large amount of said natural gas, due to the aforesaid negligence of the defendant, escaped and exploded, throwing said plaintiff, Lulu E. Bell, with great force and violence, backward and against the floor and walls of her said premises, injuring, bruising and burning said plaintiff in and about her face, arms, neck and body." (Paragraph VII.)

The defendant demurred to the complaint upon the ground that it wrongfully joins two causes of action,

denied generally its averments and alleged that at no time did it enter into an agreement with the plaintiffs relative to changing-over any of the apparatus in the premises where they lived for the use of natural gas but that such change was made by reason of an agreement with L. H. North, the owner thereof; that the apparatus was used by the plaintiffs up to the time of the alleged accident but that no notice of any defect or failure therein was given the defendant by either the plaintiffs or L. H. North; and that if the plaintiff, Lulu E. Bell, received any injuries as a result of an explosion of gas in such apparatus it was due to her sole negligence and in no degree to any act or omission on the part of the defendant.

The demurrer was overruled and the case went to trial. The jury returned a verdict for the plaintiffs in the sum of $5,000 and from the judgment entered thereon, as well as from the order denying its motion for a new trial, the defendant appeals.

██ The overruling of the demurrer and the refusal to sustain appellant's objection, made at the opening of the trial, to the introduction of any evidence in the case are the first and second errors assigned, both being based upon the ground that the complaint joins an action *ex contractu* with an action *ex delicto* in violation of section 3748, Revised Code of 1928. It is contended that paragraph V sets up a breach of a contractual undertaking by the appellant to change all appliances owned by the consumers of gas in Phoenix so as to make them safe for natural gas and that Paragraph VI alleges a tort, to wit, neglect by appellant to repair defective service of gas to appellees after it had been notified thereof. The first allegation does, it is true, set up a contractual relation and its breach but, notwithstanding this, it is plain that the complaint does not, even though these two allegations be treated as two distinct and specific

acts of negligence, come under the ban of section 3748, because the averment that appellant carelessly, negligently and without regard for the rights of appellees as its consumers, failed to prepare all gas appliances used by them for the safe and proper use of gas, or its equipment regulating the pressure and flow thereof, shows clearly that appellees were relying on negligence in this allegation. The contract alleged to have been breached is one of a class which carries with it certain duties on the part of the appellant independently of its express terms and its breach constitutes a tort. Appellant owned a franchise obligating it to supply the citizens of Phoenix with gas and when, after furnishing artificial gas for many years, it decided to substitute natural gas therefor and undertook to make whatever changes in the gas appliances of the city's consumers the safe and proper use of natural gas required, the law imposed upon it the duty to make these changes properly, because it was an undertaking calling for expert knowledge and the exercise of the same degree of care required of those managing public utilities generally, *Alabama Utilities Service Co.* v. *Hammond,* 225 Ala. 657, 144 So. 822, and any failure therein which resulted in personal injury constituted a tort, just as much so as does the failure on the part of a railroad company to transport a passenger safely after undertaking to do so. *Coy* v. *Indianapolis Gas Co.,* 146 Ind. 655, 46 N. E. 17, 36 L. R. A. 535; *Doremus* v. *Root,* 94 Fed. 760. In 1 C. J. 1017, § 139, appears the following statement relative to these particular classes of contracts:

"There are also certain classes of contracts which create a relation out of which certain duties arise as implied by law independently of the express terms of the contract, a breach of which will constitute a tort, and in such cases an injured party may sue either for breach of the contract or in tort for breach of the

duty imposed by law, the rule being that, where there is a breach of duty imposed by law, an action in tort is not precluded because such duty arises out of a contract relation. This rule applies in the case of the contractual relation between . . . carrier and passenger or shipper, and between other public service corporations, or persons exercising such franchises, and their patrons, such as gas or water companies, or telegraph companies.''

█ Both at the conclusion of appellees' case and at the close of all the evidence appellant moved for an instructed verdict upon the ground that the allegations of the complaint had not been proved, and the denial of each of these motions is made the basis of an assignment. Under such circumstances it is necessary to consider the second motion only, because appellant waived any error that may have resulted from the overruling of the first motion by proceeding with the trial instead of then resting its case. *Southwest Cotton Co.* v. *Ryan,* 22 Ariz. 520, 199 Pac. 124. However, the grounds of the first motion were again urged in the second, and the ruling on them raises the principal question presented by the appeal. A determination of it renders necessary a statement of the relevant facts surrounding the accident.

Appellees became tenants of L. H. North at 115 North Twenty-First Avenue in July, 1933, and remained such at all times hereinafter referred to, the house being rented to them furnished and containing, among other articles, a Buck cooking stove that had been used for sixteen years at that place and operated by gas furnished by appellant. On the top of this stove were four burners and in the oven, below and under these, one which the gas reaches through a small tube connecting it with the manifold or gas pipe. The valve by which the gas passing to this burner is turned on and off is outside the stove near the bottom and within two or three inches of its right wall.

After appellees had been using this stove about five months, or shortly prior to January 1, 1934, they were notified by appellant that it would within a short time thereafter make the changes in their gas appliances that the use of natural gas requires and early in January of that year it did this, natural gas being substituted for artificial on the 15th of that month. The changes made in this stove, according to the person who did the work, were these: "Adapted 4 top and 1 oven burner. Enlarged vent to prevent flame floating. Drilled 4 top burners." A burner is adapted for natural gas by changing the appliances so that less gas will reach it for consumption, and this was done in the case of the oven burner by making in the exit end of the valve attached to the manifold supplying gas to the stove a smaller orifice than the use of artificial gas requires. The vent was an opening in the back wall of the oven. Drilling a burner was merely enlarging the small ports or openings in it out of which the gas flows and burns. The burner on the water heater was also drilled, but the one in the oven was not, the testimony being that this was not often necessary.

Mrs. Bell, according to her testimony, had no trouble with the stove prior to the change-over but after she began using natural gas both the oven burner and the top burners would go out. They were all right if turned high but were not when turned to medium for slow cooking. They should not, one of appellant's witnesses testified, go out even then if working properly. She did not remember the exact date following the change-over the oven burner went out first, but said, "It may have been a month or so, a couple of months." It went out on several occasions when the top burners were off; it did this also when they were lighted and it was turned on halfway though it did not always go out under these circumstances, for she

used both top and oven burners at the same time right along. She had smelled gas several times after the change-over and always opened the oven to let the gas air out before lighting any of the burners, but she testified that she never smelled gas when the top burners were lighted though she knew from experience that the oven burner was liable to go out. She testified that about March 15, 1934, and twice later that year, she notified appellant by informing the man at the office where she paid her light and gas bills of the condition of the stove, and that he said he would have it taken care of but that no one ever came out to do so.

About 5:30 P. M. on January 1, 1935, Mrs. Bell was preparing dinner for her family and for the purpose of warming some food turned the oven burner about halfway on, as she had done time and time before, lighted it, placed several bowls of food in the oven and closed the door. She then lighted one of the top burners to heat water and about fifteen minutes later started to take the bowls of food out and she describes what then happened in this language:

"A. . . . . as I bent over and opened the oven, I got a warning of the gas and the door just slammed back, shot by, and so I did not raise up. My first thought was to turn it off and I bent over to turn the burner off on the side and as I did, I remember something struck me here and I don't remember any more until I was picked up and I was burned and I was standing at the sink table when I came to. . . .

"Q. Well, when you went to open the door did you get a whiff of raw gas? A. Yes, sir. I was bent over. I stooped over to open the oven and I didn't raise up. I reached over to shut the jet off.

"Q. Which jet? A. On the side of the oven, that is where the oven turns on.

"Q. You didn't try to turn the jet off on the top? A. No, sir; I just bent on over. I thought I should turn the gas off real quick is the first thought I had.

"Q. You didn't think to turn the lit gas off first? A. No sir. . . .

"Q. You got that smell of gas and immediately you remembered that it happened a number of times before and your first thought was to turn it off? A. I didn't think of anything. The first thought I had was to turn it off and that is what I done."

She was seriously burned and bruised and unable to do anything for a number of weeks. The evidence introduced by her discloses that she was pregnant at the time and that the shock to her nervous system resulting from the explosion caused her to suffer a miscarriage on April 25th thereafter.

The accident was reported to appellant early the next morning by the owner of the premises and a man was sent out immediately. Mr. North went to the house with him and gave the following testimony as to what he did:

"A. . . . we looked over the stove. He tried the burners, and tried the oven burner and finally he said to me, 'Well, I think I have got to drill the holes larger in that burner, they don't seem to be large enough.' Well, I said, 'What I don't know about a stove, a gas stove, would make a large book. You know what to do, so go ahead and do it.'

"Q. What did he do? A. He went to work and I left shortly after that, I went to the city, but he went to work to drill the holes larger, and I understand he did. I presume he will tell you so."

In reply to the question, "Will you explain what they were doing, how they were working or what they were working with?" Mrs. Ola Frank, a close neighbor, who was there that morning, testified:

"A. They took the burners out of the oven and took it out in the backyard and drilled holes out, and one of those top burners. I don't know if they drilled more than one top burner or not. After he drilled the holes and put them back, he cleaned the vents, I

think they call them, and tested the stove out, tested the burners.''

Appellant's witness, C. C. Underwood, testified that following the accident he broached the oven, that is, cleaned it, but did not admit drilling it.

They also cleaned out the service, removing some dust therefrom, and installed a new regulator near the meter outside the house.

After the stove's gas appliances were fixed following the explosion Mrs. Bell testified that up to the date of the trial, a period of about ten months, the oven burner had given her no further trouble.

█ It is urged first in support of the motion for a directed verdict that the complaint charges a failure to carry out the express agreement to change-over appellees' gas appliances for the use of natural gas in an efficient manner but that their evidence, without contradiction, proved that the change had been properly made, and that since specific acts of negligence only were alleged appellant was entitled to an instructed verdict. A reading of the complaint, however, discloses that paragraph V does not attempt to specify what changes in appellees' gas appliances or its equipment were required to render the use of natural gas safe, nor in what particular it had not done so, but charges generally that it neglected and failed to prepare them properly, and that paragraph VI alleges notice to appellant that natural gas was not being properly delivered to their premises, that the flame of gas was irregular and went out on many occasions allowing large quantities of gas to escape, and that appellant failed to repair it, but it does not set up specifically what caused the gas flame to go out, the allegation being that it was due to uneven pressure or some reason not apparent to the said appellees. These are not allegations of specific acts but of general negligence, *Roy* v. *Smith,* 134 Cal. App. 240, 25

Pac. (2d) 251, 26 Pac. (2d) 650, and do not call for the application of the rule contended for by appellant.

 It is next contended in support of the motion that there was no evidence of notice to appellant prior to the date of the accident of the improper flow of gas. Its position is that the statement of Mrs. Bell that she notified the man in the office to whom she paid her gas bills about March 15, 1934, and twice later that year, and that he told her that he would see that it was taken care of, did not constitute notice because she did not remember the exact dates this was done, could not identify the person to whom she spoke and that he did not take down her address or make note of what she said. The cashier denied that Mrs. Bell spoke to him about it and stated that if such a complaint had been made by her it would have been referred to the contract department which handled all such matters, and the person in charge of that department testified that the record did not show such a complaint but that if Mrs. Bell had made one a trouble order would have been filled out and placed in the files, and this was not done. Mrs. Bell did not notify the landlord, Mr. North, of the defect in the stove, though he testified that she sent her little girl to his house one day for a fuse and that he said to her, ''That is right, whenever anything occurs like that, come over and let me know, we will take care of it.'' She and her husband paid the gas bills and were not required to notify the landlord but were at liberty to take the matter up through him, or directly with the company, as they saw fit. Her positive statement that she gave notice at the office on three separate occasions was sufficient to take the case to the jury on this question. The manner in which appellant handled complaints as to service and the fact that it had no record of one made by Mrs. Bell had a direct bearing on

the weight of her testimony as to notice but did not
in any sense affect its competency.

The third ground urged in support of the mo-
tion is that the evidence discloses that the explosion
was caused by the sole negligence of the appellee, Mrs.
Bell, and that appellant was entitled, as a matter of
law, to a directed verdict. The contention is that on
several occasions during 1934 the burner in the gas
oven went out and permitted raw gas to escape into
the oven and that on each occasion the top burners
were either not lighted or were turned off before Mrs.
Bell opened the oven to air it out but that in this in-
stance, after smelling gas, she opened the door with-
out turning off the top burner, and that the explosion
would not have occurred if she had not done this.
That does not, as we view the evidence, accurately
describe the action of Mrs. Bell at the time. When
she stooped over to open the oven door to take out
the food she was warming, or just after opening it—
the evidence being somewhat indefinite as to which—
she smelled gas, and her first thought then was to
stoop lower and shut off the valve to the oven burner
as she had always done before, and as she started to
do this the door slammed by, hitting her in the face,
and the explosion occurred. She perhaps knew that
the top burner should not be lighted when gas was
escaping from the oven burner but she had no warn-
ing that this was occurring until she stooped over to
open the door or had done so, and it does not appear
that she then had time to turn off the top burner be-
fore the explosion occurred. She attempted to do the
first thing that came to her mind, the thing she had
always done before when she smelled gas from that
source, that is, stoop over and shut off the oven burner.
Her failure to turn off the top one instead, however,
did not render her act, even if careless or negligent
at all, so much so that the court could say as a matter

of law that it was the sole cause of the explosion. If she had smelled gas before opening or attempting to open the door and had known it was coming from the oven and had accumulated there in sufficient quantity to cause an explosion, there might be some ground for appellant's contention but it would be a very harsh rule of law that would attach to her failure to decide the proper step to take to prevent an explosion under the circumstances in which she found herself. She had never before smelled gas in the oven when a top burner was lighted and took the course she had always taken when she did smell it, and took it as quickly as possible. The mere fact that it did not occur to her the instant she realized gas was escaping to turn off the top burner rather than the one in the oven from which it was coming did not indicate even contributory negligence, at least, to the extent that the court should of its own motion have instructed thereon in the absence of such a plea. The case of *Calumet & Arizona Min. Co.* v. *Gardner*, 21 Ariz. 206, 187 Pac. 563, is not applicable to the situation here presented.

■ It is clear, therefore, that the court did not commit error in denying the motion for a directed verdict and it readily appears from the following statement of the controlling facts that the jury was justified in concluding that the cause of the oven burner's being extinguished was appellant's failure to prepare it properly for natural gas, the low pressure of the gas, or both: The stove had given appellees no trouble whatever prior to January, 1934, when appellant prepared its gas appliances for the safe use of natural gas by adapting its four top and its one oven burner, by enlarging its oven vent, and by drilling its four top burners; it did not drill or broach, that is, clean, the oven burner; the change-over was completed and natural gas substituted on January 15, 1934, and soon thereafter the oven burner began to go

out and permit gas to escape, and continued to do so; Mrs. Bell notified appellant of this on several occasions in 1934, but it failed to make the necessary repairs; the oven burner was lighted about 5:30 P. M., January 1, 1935, and turned on about halfway, and one top burner immediately afterwards lighted; in about ten or fifteen minutes Mrs. Bell started to or did open the oven door and found no flame burning and the gas escaping; she reached to turn off the oven burner but the gas immediately caught from the top burner, which it does not appear she had time to turn off before the explosion occurred, and caused the injuries complained of; the following morning one of appellant's employees tested the stove to ascertain the cause of the explosion and after doing so stated that he would have to drill the holes larger in the oven burner, because they did not seem to be large enough, and, according to two witnesses, he did drill the holes or ports in that burner, or according to his testimony, broached them; that appellant cleaned out the gas pipe near the meter and installed a new regulator; thereafter, and up to the time of the trial, a period of ten months, the stove gave no further trouble. *Fort Worth Gas Co.* v. *Cooper,* (Tex. Civ. App.) 241 S. W. 282; *Kelly* v. *Pittsfield Coal Gas Co.,* 257 Mass. 441, 154 N. E. 74; *Tietke* v. *Forrest,* 64 Cal. App. 364, 221 Pac. 681; *Little Rock Gas & Fuel Co.* v. *Coppedge,* 116 Ark. 334, 172 S. W. 885; *Hilson* v. *Pacific Gas & Elec. Co.,* 131 Cal. App. 427, 21 Pac. (2d) 662, 667. In the last of these cases the facts are sufficiently similar to those we are here considering to render the following excerpt from it applicable:

"While plaintiff's case was necessarily circumstantial, it pointed almost conclusively to appellant's negligence as the proximate cause of the explosion. This will be seen if we examine the chain of circumstances briefly again. The links run: No trouble with

the oven until straight natural gas substituted for reformed natural gas, making necessary an adjustment of burners; attempted adjustment of burners by defendant; constant trouble thereafter with burners flaring up and going out; gas lighted at 8 A. M. on morning of explosion; apparently no escaped gas present at that time because no explosion occurred; gas found extinguished at 8:20 A. M.; burners turned off and oven and room ventilated for 10 minutes; gas relighted and explosion occurred; most likely causes of burners going out either low pressure of gas or improper adjustment of burners, with down draft in flue as a possible, but not probable, cause. More than one man has gone to the gallows upon circumstantial evidence not so strong.''

■ The court did not submit the case under the doctrine of *res ipsa loquitur* but the evidence is such that this rule could perhaps have been properly invoked. Appellant's control over the lines, gas, pressure and the gas appliances of its customers so far as repairs and adjustment were concerned, in connection with the other facts would seem, under the authorities, to render it applicable. *Hilson* v. *Pacific Gas & Elec. Co.*, *supra; Brunig et al.* v. *Pacific Gas & Elec. Co.*, 140 Cal. App. 254, 35 Pac. (2d) 226.

■ Appellant contends further that where the evidence is such that a reasonable man could find that the proximate cause of the injury was one of a number of acts, none or only one of which could be charged to it, there is nothing to submit to the jury because a verdict based solely on guess or conjecture is not sustainable. This is a correct statement of the general rule but we are unable to see its applicability to the facts of this case. It is argued that the evidence showed the proximate cause of the explosion might have been, first, the sole negligence of Mrs. Bell; second, the defective condition of the valve governing the flow of gas into the oven burner, or, third, the defective alignment of the gas injector nipple which

discharged gas into the mixing chamber of the oven burner. It has just been shown that under the evidence the jury was justified in finding that Mrs. Bell was not responsible for the accident, and so far as the defective valve and defective alignment of the gas in the injector nipple are concerned it is sufficient to say that one of appellant's employees, after testing the stove the morning following the accident, testified that neither the valve nor the alignment of the nipple was defective, for the reason that the stove burned satisfactorily at that time and this would not have been true if the injector nipple of the valve had been discharging the gas elsewhere than in the center of the mixing chamber. In addition, there was no evidence that there was any change made in the alignment of the gas jet following the explosion and Mrs. Bell testified that the stove worked all right after that.

There are one or two other assignments but they are clearly without merit and it is not necessary to consider them. The judgment is affirmed.

ROSS and LOCKWOOD, JJ., concur.