34505.   CITY OF ALBANY *v.* BURT.

Decided April 22, 1953—Rehearing denied May 13, 1953.

148

*A. N. Durden, Peacock, Perry & Kelley, Jesse W. Walters,* for plaintiff in error.

*H. G. Rawls, B. C. Gardner, Jr., Hilliard Burt, W. H. Burt,* contra.

FELTON, J. ■ The court did not err in overruling the general demurrer to the petition as amended. It set forth a cause of action on at least two theories: (1) the failure by the defendant to equip the plaintiff's heater with a 100% shut-off safety pilot; and (2) the city's failure to warn the plaintiff of the danger involved in the use of heavier-than-air gas in an appliance not equipped with a 100% shut-off safety pilot. The allegations of the petition are that the city was engaged in converting appliances in its own interest as well as that of its customers, and the ordinary rule as to the non-liability of a supplier of gas beyond the meter and service pipes does not apply. *Maynard v. Atlanta Gas Light Co.,* 24 *Ga. App.* 5, 6 (99 S. E. 472), is not authority to the contrary. There are two distinctions between that case and this one. The gas company in that case was not making an inspection for its own benefit, and the employees of the company in that case were not authorized to make an inspection. In this case, it was not necessary for the plaintiff to allege further that the defendant had actual knowledge that there was not a 100% shut-off safety pilot on the heater. The fact that the heater had functioned properly from the time of the conversion by the city in the summer of 1949 until June 1, 1951, would not relieve the defendant as a matter of law from the alleged duties to install a safety shut-off or warn against the danger of not having one installed for the reason that the purpose of the shut-off is to stop the escape of gas, whether its escape is caused by the fault of the supplier of the gas or the defectiveness of the heater. For liability of a

supplier of gas in similar cases see: *Chisholm* v. *Atlanta Gas Light Co.*, 57 *Ga.* 29; *Bray* v. *Atlanta Gas Light Co.*, 46 *Ga. App.* 629 (168 S. E. 96); House v. Wichita Gas Co., 137 Kan. 332 (20 Pac. 2d 479); *Womack* v. *Central Ga. Gas Co.*, 85 *Ga. App.* 799 (70 S. E. 2d 398); *Atlanta Gas Light Co.* v. *Hodges*, 47 *Ga. App.* 153 (170 S. E. 87); *Hodges* v. *Atlanta Gas Light Co.*, 75 *Ga. App.* 105 (42 S. E. 2d 244); *Atlanta Gas Light Co.* v. *Johnson*, 76 *Ga. App.* 413 (46 S. E. 2d 191); *Atlanta Gas Light Co.* v. *Davis*, 80 *Ga. App.* 377 (56 S. E. 2d 140); Detroit City Gas Co. *v.* Syme, 109 Fed. 2d 366; Central Arizona Light & P. Co. *v.* Bell, 49 Ariz. 99 (64 Pac. 2d 1249); Heller *v.* Equitable Gas Co., 333 Pa. 433 (3 Atl. 2d 343), 138 A. L. R. 888, note; *Newill* v. *Atlanta Gas Light Co.*, 48 *Ga. App.* 226 (172 S. E. 232). Under the allegations of the petition, the plaintiff was not as a matter of law barred by his own negligence.

■ The court did not err in overruling the special demurrers as against the attacks made therein. The ruling on the general demurrer covers most of the important contentions on the special demurrers. Mention will be made of one special demurrer, to wit, the one complaining of the failure of the plaintiff to set forth the entire ordinance of the city requiring a 100% shut-off safety pilot. This was the only objection by demurrer to the allegation setting forth the ordinance. The plaintiff introduced a certified copy of a part of the ordinance, to which the defendant objected on the ground that by reason of the other parts of the ordinance, which the defendant's counsel quoted, the ordinance only required the 100% safety shut-off on new appliances. It thus appears that the defendant knew what the whole ordinance consisted of and could have easily introduced the whole ordinance in evidence to show, if it could, that its contention was correct. So we think that the overruling of this special demurrer was harmless to the defendant. See *Scott* v. *Holden*, 69 *Ga. App.* 615, 616 (26 S. E. 2d 456); *Steed* v. *Harris*, 52 *Ga. App.* 581 (183 S. E. 847).

■ The plaintiff introduced in evidence a certified copy of a part of an ordinance of the City of Albany, as follows: "An ordinance entitled An ordinance creating a Board of Plumbing Examiners, adopting a plumbing and gas fitters code: regulating plumbers and gas fitters: providing specifications for

work and material: providing penalties: and for other purposes. Be it ordained by the Board of City Commissioners of the City of Albany, Georgia, and it is hereby ordained by authority of same: Article XVI, special rules and regulations governing gas connections, piping and appliances. * * * Section XIV. Shut-off safety pilots. All automatic gas appliances shall be equipped with 100 percent shut-off safety pilots." The defendant objected to the ordinance on the following grounds: "That it is simply a portion of an ordinance dealing with gas appliances—the portion of the ordinance, as typed, is correct and it is a correct certified copy of that particular portion of the ordinance—we object because other relevant sections of the ordinance are not at the same time introduced—he can not pick out and introduce one section and not introduce the others. In support of our objection we cite section 10, under which the size of flues is shown, and under section 12 it sets out when old appliances are replaced with new appliances that the new appliances must be installed in accordance with the terms of this ordinance. We take the position that means and a proper construction of the ordinance means that it does not apply to old appliances, but, when old appliances wear out and are replaced, then the ordinance and the provisions of section 14 do apply, and, for all of these reasons, we object to the portion of the ordinance offered."

It was not error to admit the portion of the ordinance set forth above over the objections urged. If the ordinance did contain the other provisions stated by counsel for the defendant in his objection, it does not necessarily follow that the ordinance required only that new installations of appliances be equipped with 100% safety shut-offs. In the first place, it does not appear that there are not still other portions of the ordinance which were not introduced in addition to those introduced and those indicated by the defendant's objections to the introduction of the part above referred to. In the second place, the evidence shows that the City of Albany had decided to change the gas which it supplied to its citizens from lighter-than-air gas to a heavier-than-air gas, and that the ordinance was passed in contemplation of the change and because of the planned change and for the purpose of rendering safe the use by its customers of the new gas to be supplied, whether old or new appliances were used.

While there is no evidence or testimony specifically showing that the ordinance was passed in contemplation of the conversion of the gas system, there is no evidence that it was not so passed, and the only reasonable inference is that it was passed in contemplation of the conversion of the gas system from a lighter-than-air gas to a heavier-than-air gas. If there had been no plan to so convert the gas system, there would have been no occasion for such an ordinance, as the safety shut-off pilot was not a necessary safety measure in the use of a lighter-than-air gas. Furthermore, as stated in division 2, the balance of the ordinance could have been introduced in evidence by the defendant, if it had so desired. In the absence of any other attack on the ordinance, we hold that its purpose was to require plumbers and gas-fitters to equip automatic gas appliances with 100% shut-off safety pilots either when they installed a new appliance which was not already so equipped or when they converted an old appliance which did not have such safety equipment from a lighter-than-air gas appliance to a heavier-than-air appliance. Otherwise, after the conversion by the city of its gas system to a heavier-than-air gas, only those customers who installed new gas appliances after the conversion would be safe in the use of the gas. This answer to the city's argument as to what the ordinance meant also answers the contention that the ordinance requirement applied to the owners of the appliances. If such were the case, the ordinance would have protected only the owners who bought new appliances. The remainder of the customers would have been allowed to use their old and unsafe appliances and live in constant danger. The ordinance had for its purpose the requirement that the safety measures be taken by competent mechanics, experienced in their calling, and not the requirement that appliance owners should protect themselves, when many of them were unaware of the danger that confronted them. As to the construction of municipal ordinances, in 37 Am. Jur. 827, § 187, it is stated: "They should be construed reasonably, in connection with the purposes they are intended to serve, so as to give reasonable effect to the objects sought to be accomplished. A construction of police ordinances should not be adopted which is supertechnical and results in defeating instead of effectuating the obvious purpose

of their enactment. Ordinances must be read and construed as a whole or as an entirety in the light of circumstances existing at the time of their adoption, with proper regard for the consequences which would result from giving to them a particular meaning; the courts must keep in mind the object or purpose of the enactments, and the evil consequences which the lawmakers intended to guard against by their adoption. It has been held that there can be no intent in an ordinance not expressed in its words, but it has also been held that that which is implied in an ordinance is as much a part of it as that which is expressed." The preamble may be considered in this case on the question as to whom it applied. 37 Am. Jur. 831, § 192. The argument is also made that the city could not violate its own ordinance. It is true that the passage of an ordinance is a governmental function, but it is too plain to merit much discussion that, when a city passes such an ordinance and violates it in the capacity (as plumber and gas fitter) of the persons at whom the ordinance was aimed, the city is liable for the same consequences as the individuals sought to be regulated. The city was bound by its ordinance in exercising a ministerial function, as it was in this case, whether it could or would prosecute itself criminally for a violation thereof. 38 Am. Jur. 300, § 603; Everly v. Adams, L. R. A. 1915E, 448-50; Code § 69-301; O'Brien v. Greenburgh, 239 App. Div. 555, 268 N. Y. S. 173, aff'd. in 266 N. Y. 582 (195 N. E. 210) ; 37 Am. Jur. 729, § 115. The City of Albany strongly contends that certain Missouri cases correctly hold that a municipality is not bound by its own ordinances. Even if the cases cited do hold as contended, we do not think that such rulings are sound as to ordinances such as we have in this case, especially when the municipality assumes the role of one sought to be governed by the ordinance in a business capacity and not a governmental capacity or a corporate ministerial capacity. The principal case cited is Bean v. City of Moberly, 350 Mo. 975 (169 S. W. 2d 393). In that case an ordinance required persons making excavations in or near streets, sidewalks, or driveways to enclose them with barriers and place red lights at ends, and the city was charged in the petition with negligence per se in not complying with the ordinance in its repair of the streets. It is doubtful to us

whether this ordinance applied to the city, as it was already under a common-law duty to keep its streets safe. But assuming that it was broad enough to apply to the city, we are faced with the question whether the city could be charged with negligence per se under the facts. In considering the soundness of this case, we might advert to the fact that in repairing its streets the city was exercising a ministerial corporate function and not a business-for-profit function, which conceivably might make some difference. However, the Missouri court based its ruling on the rulings in two other cases. The court in the Bean case stated that it had "not discovered a case in which it was specifically sought to impose liability on a municipality for failure to observe its own ordinances in the manner attempted," but stated that two cases, cited below, indicated the applicable principle. We think it was at this point that the opinion in the Bean case turned in the wrong direction, in that in our opinion neither case supports the proposition that a municipality is never liable for the failure to comply with its own ordinances. The first decision cited by the Missouri court in the Bean case as indicating the applicable principle was Mehan v. City of St. Louis, 217 Mo. 35 (116 S. W. 514). In this Mehan case, piles of lumber were left in an alley adjacent to a fire station. A boy walking through the alley stepped on a nail in one of the boards and was injured. One of his assignments of negligence as to the city was that the boards and nails were permitted in the alley in violation of an ordinance. It was held that the city was not liable for injuries to private persons resulting from a *failure to enforce its police regulations*. The second decision cited in the Bean case was Sallee v. City of St. Louis, 152 Mo. 615 (54 S. W. 463). We think the ruling in the Sallee case is to the same effect. In that case Sallee sued the city to recover damages which he contended he received because of the negligence of the defendant city in allowing a dead horse to remain in one of the public streets of the city. A city ordinance was introduced in evidence, which provided that the city contractor should remove dead animals within six hours of daylight after notice, under penalty, and that no one else should interfere with it. This ordinance was not aimed at the city, but at a particular employee, and the court held that the city was not liable for the

failure "to enforce an enactment of its own." So, in our opinion, the ruling in the Bean case is not supported by the authorities cited to uphold it. But if we are wrong in these conclusions we think that the ordinance in the instant case stands on a different footing for reasons which are apparent from what is stated in the opinion. Von Der Haar *v.* City of St. Louis (Mo. App.), 226 S. W. 2d 376, followed the Bean case.

■ In ground 27 of the motion for new trial, the defendant assigns error on the exclusion from evidence of various news stories and advertisements appearing in the Albany Herald concerning the conversion of the gas system of Albany from lighter-than-air gas to heavier-than-air gas. All these newspaper notices did was to give notice of the intended conversion and warn gas users not to operate gas appliances until the city had converted the appliances for use of the new type gas. The notices contained no information as to the advisability or necessity of a 100% safety shut-off pilot. There was no evidence that the plaintiff saw or read any of the notices. Even if he had, in the absence of evidence showing that he converted his heater, he had a right to assume that the city had properly converted his heater under the facts appearing. There was no error in excluding the newspaper notices.

■ Ground 29 of the motion for new trial assigns error on the charge of the court to the effect that a violation of the quoted ordinance by the city in the conversion of the plaintiff's appliance would be negligence per se. This ground is without merit for the reasons stated in division three.

■ For the reasons stated in division three, it was not error for the court to refuse to charge as requested that the city was under no duty under said ordinance to equip the plaintiff's heater with a 100% safety shut-off pilot in the process of converting the heater by the city, under the circumstances appearing in this case.

■ Ground 35 complains of the charge of the court as to damages recoverable. The excerpt from the charge is ten pages in length. The exceptions are: (1) that the charge is highly argumentative and by repetitious statements unduly emphasizes the damages claimed; (2) that the charge was confusing, especially as to the right of the plaintiff to recover for impaired capacity

to labor on one hand and impaired earning capacity on the other; and (3) that the evidence was insufficient to authorize a recovery for impairment of earning capacity. There is no merit in this ground. We have read the charge and the evidence, and do not think the charge was erroneous or harmful for the reasons assigned. We do not think it will serve any useful purpose to set out the charge excepted to.

■ There are numerous assignments of error on the admission of evidence introduced for the purpose of showing common-law negligence on the part of the defendant, and on charges of the court on that subject. We have examined these assignments of error and, under the facts of this case, there was no harmful or prejudicial error in any ruling or charge complained of, for the reason that the evidence demanded the finding that the city was guilty of negligence per se in violating the pleaded ordinance. The grounds of the amended motion not otherwise ruled on and discussed are without merit.

■ The evidence authorized the verdict. Without quoting from the voluminous record of evidence, suffice it to say that the evidence demanded a finding that the city violated the ordinance, and the jury was authorized to find that such violation was the proximate cause of the plaintiff's injuries; and no circumstances were proved which demanded a finding that the plaintiff was barred by his own negligence from recovery. The damages found were well within the range of the evidence. The general grounds of the motion were properly overruled.

The court did not err in overruling the general and special demurrers to the petition and the motion for new trial as amended.

*Judgments affirmed. Sutton, C. J., and Worrill, J., concur.*