43300.   ATLANTA GAS LIGHT COMPANY v. SLATON et al.
43301.   SLATON v. ROOKER, INC. et al.

ARGUED JANUARY 9, 1968—DECIDED FEBRUARY 12, 1968—
REHEARING DENIED FEBRUARY 27, 1968—CERT.

*Hansell, Post, Brandon & Dorsey, Hugh E. Wright,* for Atlanta Gas Light Co.

*Marvin G. Russell, Turner Paschal,* for Slaton.

*Hurt, Hill & Richardson, James C. Hill, Arnold Wright, Jr.,* for Rooker, Inc.

JORDAN, Presiding Judge. ■ The first four enumerated errors by the gas company relate to adverse rulings on demurrer. The petition as finally amended shows the presence of an uncapped gas line in apartment No. 10, occupied by the plaintiff, who was not a customer of the gas company. This line was connected to a meter and supply line of the gas company, a situation also existing with respect to other apartments in the building. About 3:30 p.m. on December 31, 1963, the defendant gas company received notice of escaping gas in the building, especially in apartment No. 17. Simultaneously, gas was escaping into apartment No. 10. An employee of the gas company came to the building, went to apartment 17, discovered the leak there, went to the meter for apartment 17 and turned it off. He returned to apartment 17 to give the standard warning to the occupant and was returning to the meters when the explosion occurred in apartment No. 10 at about 4 p.m., allegedly causing the injuries and property damage. While the allegations of negligence as the proximate cause of the occurrence are interspersed throughout the petition and intermixed with various details surrounding the occurrence, contrary to the usual practice, it is clear that even when the petition is most strictly construed against the pleader, under the rules in effect antedating the new Civil Practice Act and applicable to the present case, the pleader purports to show negligence of the gas company in at least the following particulars: 1. The defendant's employee who came to the scene failed to exercise ordinary care to detect the passage of gas through

the meter for apartment No. 10, and failed to cut off the flow of gas through this meter. 2. The employee failed to exercise ordinary care in not stopping the flow of gas to all units in the building while determining the source of the escaping gas, particularly with respect to meters not in use for customers, including the meter for apartment No. 10, and by failing to warn the occupants, particularly the plaintiff, to evacuate the building. 3. The company failed to exercise ordinary care by not removing the meter for apartment No. 10 when service was discontinued on June 7, 1963; in allowing the meter thereafter to remain outside the building, exposed, unsealed, and unprotected, and in failing to detect the passage of 300 cubic feet of gas through the meter between December 23, 1963, and the time of the explosion. 4. The company failed to exercise ordinary care in knowingly leaving the meters for apartments Nos. 10 and 17 in an exposed condition, unlocked, unsealed, and unprotected, knowing that such meters would likely be tampered with and turned on by parties unknown to the plaintiff, thus allowing gas to flow to apartments Nos. 10 and 17, particularly to apartment No. 10, thereby causing the explosion.

We think these allegations are sufficient to state a cause of action so as to allow a jury, upon consideration of the evidence adduced in proof of and defense thereto, to determine whether there was failure to exercise ordinary care on the part of the gas company or its employees, within the scope of such allegations, which proximately caused the explosion. No harmful error is shown by the rulings on demurrer, as argued and insisted upon before this court.

■ In the fifth enumerated error the gas company contends that the trial court erred in refusing to allow a witness who observed a person tampering with the meters shortly before the explosion to testify that this person told her that "he was trying to see what was the matter with the gas, he couldn't get no gas on" and that "he said he couldn't get it up, said it was cold down there at his house. . ." This evidence was admissible as original evidence to explain the conduct and ascertain the motives of the person whose acts may have contributed directly to the uninterrupted flow of natural gas through an uncapped

line to the plaintiff's apartment. "When in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence, not as hearsay, but as original evidence." *Code* § 38-302. "Sometimes an utterance is merely a part of the surrounding circumstances of an occurrence. Such statements are not offered to prove the fact asserted in the statement. In such cases the relevant question is whether or not such statement was made; not what fact was asserted in the statement. Proof of such statements is original evidence; not an exception to hearsay." Green, Georgia Law of Evidence, p. 585, § 288. See 11 Encyclopedia of Georgia Law, p. 357, Evidence, § 113. The transcript of the evidence discloses, however, that the gist of what was said was already in evidence, and was never excluded from jury consideration. The witness testified before the jury, prior to the offer of proof as shown in the enumerated error, that she did see a man "trying to turn the gas on, looked like" who stated, in response to her question, "I'm trying to see can I get—see what's the matter with this gas," to which she replied, "Well, you ought to call up the gas folks to do this." She also testified that she only recognized this man as a man living "down on the far end of the building" and that the man was at the meters on two occasions, first alone and later with another man whom she did not know. Although exactly what the man did on the first and second appearances is not entirely clear, she did observe him on one or the other or both occasions tampering with the meters and beating on them with something that produced a "sound sort of like a hammer was knocking out there" which was "like on iron." Under these circumstances the refusal of the court to allow the jury to hear her further testimony of what the man said was not harmful error, for the testimony was merely cumulative in establishing the fact, as matter of defense by the gas company, that someone not authorized by the company and without the knowledge of the company did open a meter thus enabling the flow and accumulation of gas which exploded.

■ The sixth, eighth, and ninth enumerated errors are directed to actions of the trial court in eliminating from jury

consideration § 1813 (6) of the Heating, Ventilating and Air Conditioning Code of the City of Atlanta and the defense of the gas company based thereon. This section is as follows: "Each outlet, including a valve or cock outlet, shall be securely closed gas-tight with a threaded iron plug or cap if not used immediately after installation, and shall be left closed until an appliance is connected thereto. Likewise, when an appliance is removed from an outlet and the outlet is not to be used again immediately, it shall be securely closed gas-tight, using a threaded iron plug or cap. In no case shall an outlet be closed with tin caps, wooden plugs, rags, corks, etc."

The court refused to allow the ordinance in evidence or to allow the jury to see the company's pleadings setting forth the ordinance and alleging that without notice to the contrary the company could presume there was no violation of the ordinance, and instructed the jury that the pleadings which the jury would have would frame the issues for consideration and determination. While the ordinance in stating requirements in the passive voice fails to impose any duty specifically on any designated person or class of persons to cap an outlet in the manner prescribed when not in use, this does not render it meaningless because of vagueness or indefiniteness. Its clear intent is to require someone to cap an outlet not in use, and in the absence of any express designation we think the implication necessarily arises that the person in control of an outlet, whether he be the landlord, a tenant, or another, is responsible for maintaining the outlet in a manner not in violation of the ordinance. There is no dispute that the ordinance placed no duty on the gas company under the circumstances in the present case. The uncontradicted evidence shows the presence of an uncapped opening in the plaintiff's apartment which had existed for some time without the knowledge of the gas company and over which the gas company had no control, and it is equally clear that the gas accumulated in the plaintiff's apartment in an explosive concentration by reason of this situation. While the gas company did not seek by its defense to charge the plaintiff with responsibility for capping the outlet (although her occupancy of the apartment may have created such a duty to comply with

the ordinance), it did seek to absolve itself from the responsibility and by so doing, necessarily pointed to the responsibility of some other person. Violation of the ordinance was negligence per se, and we think the circumstances are such in this case as to create a jury question whether this negligence alone, chargeable to someone other than the gas company and not excluding the plaintiff, or in conjunction with negligent or wilful conduct of other persons, as, for example, the conduct of the plaintiff after detecting the presence of gas in her apartment, in failing to leave or to take measures to prevent igniting the gas, and the conduct of the persons observed tampering with the gas meters, was the proximate cause of the occurrence. Any of these determinations would have required a verdict in favor of the gas company. In eliminating the ordinance and the defense of the gas company in this respect from jury consideration the trial judge deprived the gas company of a vital issue in defense of the action, i.e., proximate cause not involving the gas company, and at the same time eliminated any obligation of the plaintiff to show wherein she had no responsibility under the ordinance.

While we are mindful that an intervening act of negligence can insulate a prior act of negligence as the proximate cause of an occurrence we do not consider any conduct as shown by the evidence in this case to be such as to demand a holding, as a matter of law, that the violation of the city ordinance is not a factor in the proximate cause of the explosion, either alone or in combination with other factors. The purpose of the ordinance as a safety measure to prevent just what did happen in the present case is so obviously relevant to the consideration of proximate cause that it requires no further discussion.

Accordingly, under the circumstances shown in the present case we think it was harmful error to eliminate the ordinance and the defense of the gas company thereon from the pleadings and evidence and as an issue in the case. See *City of Albany v. Burt*, 88 Ga. App. 144 (76 SE2d 413).

■ The seventh enumerated error of the gas company is directed to the instructions of the trial court allowing the jury to consider the claim of the plaintiff for property damage, based

on the market value before and after the damage. The company objected at the trial to these instructions on the basis that there is no evidence in the record to support any such recovery. The petition contains a personal property list and the valuation of each item, allegedly a total loss in the explosion. This list consists of various items totaling $833.88 plus a bedroom suite which cost $295. The plaintiff identified the list as true and correct, and on cross examination admitted that the value placed on each was the cost price. There is nothing in the evidence to show the age or condition of the property, and no clue as to the extent of loss or damage, except the statement of the plaintiff that she recovered "very little" of the property that was in the apartment, including a Frigidaire, one chair, and a table, none of which appears on the list, whereas the testimony of others indicates the probability of only minor damage to personal property in the apartment. Assuming that if the company is liable the plaintiff is entitled to a nominal amount for property damage, the evidence is wholly insufficient and without probative value to provide the jury with any guidelines to arrive at any substantial amount for property damage, and the trial judge erred in submitting the issue of property damage to the jury for any finding for the plaintiff other than nominal damages. See *Nail v. Hiers*, 116 Ga. App. 522 (1) (157 SE2d 771); *Hoard v. Wiley*, 113 Ga. App. 328 (147 SE2d 782). Unlike the *Nail* case, however, the verdict in this case is silent as to the amount, if any, found for property damage, and affords this court with no certainty as to the amount which could be written off, except the total amount claimed for property damage, if the judgment were otherwise affirmed.

■ The eleventh enumerated error of the gas company is directed generally to the overruling of its motion for a new trial. The issues as raised therein are controlled by the preceding divisions of this opinion and the trial judge erred in overruling the motion for reasons heretofore stated.

■ The tenth enumerated error is based on the refusal of the court to direct a verdict for the gas company. Viewing the evidence as a whole we think the issues of negligence, other than negligence per se, and of proximate cause, were for jury deter-

mination, particularly in respect to whether the employee of the company dispatched to the scene of the explosion immediately prior thereto, with knowledge of a gas leak in at least one apartment, acted as a reasonably prudent person in what appears to have been an emergency situation. In the light most favorable to the plaintiff the evidence did not demand a verdict for the gas company.

■ The plaintiff having elected to proceed in the trial against the gas company after the grant of a nonsuit in favor of a co-defendant, the two defendants allegedly each being individually and jointly liable by reason of their negligence, she waived her right to appeal on the nonsuit. Accordingly, the motion of Rooker, Inc., to dismiss the appeal on the nonsuit must be sustained and the appeal must be dismissed. *McNeal v. Hunnicutt,* 105 Ga. App. 698 (125 SE2d 567) ; *Vandiver v. Ga. R. & Power Co.,* 38 Ga. App. 59, 60 (143 SE 455) ; *Ellis v. Almand,* 115 Ga. 333 (1) (41 SE 642). Also, see *McGaughey Bros. v. Latham,* 63 Ga. 67, 71; *Kollock v. Webb,* 113 Ga. 762, 766 (39 SE 339) ; *Adams v. Ga. R. & Elec. Co.,* 142 Ga. 497 (83 SE 131) ; *Wood v. Stevens,* 144 Ga. 518 (87 SE 658).

■ *Code* § 6-1801, which the defendant landlord seeks to invoke for the award of damages by this court for an unfounded appeal, is applicable only "upon any judgment for a sum certain, which has been affirmed" when, in the opinion of this court, "the cause was taken up for delay only." The appeal on the nonsuit does not come within these requirements. See *State Park Marina v. Muller,* 92 Ga. App. 689 (89 SE2d 826) ; *Jackson v. Jackson,* 178 Ga. 203 (172 SE 459) ; *Street v. Fudge,* 110 Ga. 277 (34 SE 845) ; *Collins Park &c. R. Co. v. Short Electric R. Co.,* 95 Ga. 570 (20 SE 495).

*Judgment reversed on case No. 43300. Appeal dismissed and motion to assess damages in Case No. 43301 denied. Pannell and Deen, JJ., concur.*