## 77860. TOTAL EQUITY MANAGEMENT CORPORATION v. DEMPS et al.
### (381 SE2d 51)

SOGNIER, Judge.

Tammy and Max Demps brought suit against Total Equity Management Corporation seeking recovery for damages incurred when they were injured in a gas explosion in an apartment complex managed by Total Equity. We authorized Total Equity's interlocutory appeal from the trial court's denial of its motion for summary judgment and motion to transfer.

The record reveals that appellees were residents of the Simpson Woods apartment complex in Atlanta, which was managed by appellant pursuant to a contract with the owners of the complex. On the afternoon of April 24, 1983, appellee Tammy Demps observed Doris Edwards and two companions, the tenants who lived in apartment 1H directly above appellees, moving furniture and appliances, including their stove, out of their unit, and using a wrench to tamper with the gas meters located in back of the building. Mrs. Demps discovered early the next morning that her apartment had no hot water and went to the management office in the complex to give notice of the problem, but no one was there. Mr. Demps testified by deposition that when he returned home from work around 10:00 a.m., his wife informed him they had no hot water, and he recalled that she was very angry because she believed the upstairs tenants inadvertently had cut off the gas to appellees' unit rather than to their own. Appellees then went upstairs to investigate, and knocked on the door several times but received no reply. Even though Mrs. Demps smelled gas, appellees entered the apartment. Mrs. Demps testified that Mr. Demps flipped the light switch (although he did not recall doing so), and gas that had leaked into the apartment exploded.

Renee Speight, appellant's property supervisor, testified that at the time of the explosion many of the tenants, including the residents of apartment 1H, owned their appliances, and that those who did so made arrangements directly with the gas company for termination of gas service when they moved. Speight acknowledged that appellant had initiated a dispossessory proceeding against Edwards, and the certified copy of the dispossessory proceeding in the instant record reveals that a writ of possession was issued on Friday, April 22, 1983. However, Speight also stated that appellant's practice was to take possession of a unit only after the writ had been served on the tenant. There is evidence in the record that the county marshal tacked the writ for apartment 1H to the door the morning of the explosion, but there is no dispute that no agent or employee of appellant learned that the writ had been served or that the occupants of unit 1H had moved out until after the explosion occurred and the apartment was

inspected. The testimony is in conflict as to whether apartment 1H had a hand operated cutoff valve for the gas line inside the apartment before the explosion, but all witnesses agree that upon inspecting the unit after the fire, they found no such valve.

1. Appellant contends the trial court erroneously denied its motion for summary judgment made on the ground that appellees were licensees in apartment 1H, and thus appellant was not liable for their injuries because it had no knowledge that Edwards had vacated the unit and left the gas line uncapped.

In Georgia, an agent who undertakes complete control and responsibility for management of a property owes the same duty as the owner would owe to third parties for injuries resulting from the agent's negligence, *Ramey v. Pritchett*, 90 Ga. App. 745, 751 (3) (84 SE2d 305) (1954), and our review of appellant's management contract leads us to the conclusion that this principle applies in the case at bar. Appellant does not contest the application of this principle, instead resting its argument on the contention that appellees were invitees in their own apartment but became licensees when they entered apartment 1H.

" 'The general test as to whether a person is an invitee or a licensee is whether the injured person at the time of the injury had present business relations with the owner of the premises which would render his presence of mutual aid to both, or whether his presence on the premises was for his own convenience, or on business with others than the owner of the premises. In the absence of some relation which inures to the benefit of the two, or to that of the owner, no invitation may be implied, and the injured person must be regarded as a licensee. [Cits.]' [Cit.]" *Higginbotham v. Winborn*, 135 Ga. App. 753, 755 (1) (218 SE2d 917) (1975); see OCGA § 51-3-2 (a).

In the instant case, appellees argue that they had the right to enter Edwards' apartment in order to investigate a threat to their own property. There is no dispute that appellees entered apartment 1H, in which they had no right of possession, without invitation from or notice to anyone, for the purpose of determining whether the occupants had turned off appellees' gas supply. Accordingly, under the applicable case law the evidence unequivocally established that, although appellees were invitees in their own apartment and in the building's common areas, once they crossed the threshold of apartment 1H they became licensees. See *Armstrong v. Sundance Entertainment*, 179 Ga. App. 635 (347 SE2d 292) (1986).

While an owner is liable to an invitee for damages arising from his failure to exercise ordinary care in maintaining the safety of the premises, OCGA § 51-3-1, the owner is liable to a licensee "only for willful or wanton injury." OCGA § 51-3-2 (b). Accordingly, appellant is liable for physical injuries suffered by appellees as licensees only if

(a) appellant knew or had reason to know of the condition and should have realized that it involved an unreasonable risk of harm to appellees, and should have expected that they would not discover or realize the danger; and (b) appellant failed to exercise reasonable care to make the condition safe, or to warn appellees of the condition and the risk involved; and (c) appellees did not know or have reason to know of the condition and the risk involved. *Bragg v. Missroon*, 186 Ga. App. 803, 804 (368 SE2d 564) (1988).

Appellees argue that a factual dispute exists on this issue because appellant knew that Edwards owned her own stove and had initiated dispossessory proceedings against her. However, we agree with appellant that there is no evidence in the record that it knew or should have known of the danger posed by the uncapped gas line in apartment 1H. There is no dispute that before the Monday morning explosion, appellant was not aware that the residents of apartment 1H had moved out on Sunday afternoon, that they had disconnected the gas line to their stove, or that they had cut off gas service to appellees' unit. Although a writ of possession had been issued for unit 1H on the preceding Friday, the record reveals that the writ was not executed until Monday morning shortly before the accident at issue, and appellant's onsite agents were not aware of this execution and thus had done nothing to take possession of the apartment. Further, appellees have acknowledged that they *were* cognizant of the risk, as they had seen Edwards and her companions tampering with the gas meter, and Mrs. Demps admitted smelling gas before she and her husband walked inside the unit. See generally *Nixon v. Edmonson*, 177 Ga. App. 662, 663 (340 SE2d 278) (1986).

We find appellees' citation to *Wilson v. Central of Ga. R. Co.*, 132 Ga. 215 (63 SE 1121) (1909) inapposite, as that case addressed the liability of one whose negligence led to the damages incurred by a plaintiff injured while trying to avoid the hazard created by the defendant, whereas in the case at bar appellees were injured as a consequence of a condition created by a third party without appellant's knowledge. Nor do we agree that OCGA § 44-7-14 imposes liability upon appellant, as that statute would apply if appellees had been present at the express or implied invitation of Edwards. *Yates v. Crumbley*, 116 Ga. App. 366 (157 SE2d 295) (1967). Moreover, appellant had no duty to inspect apartment 1H while Edwards was in possession, and cannot be held liable for her negligence absent notice of the hazardous condition she created. *Howell Gas of Athens v. Coile*, 112 Ga. App. 732, 738-740 (146 SE2d 145) (1965). Thus, we find appellant was entitled to summary judgment on the issue of negligence. See generally *Gill Plumbing Co. v. Macon*, 187 Ga. App. 481 (370 SE2d 657) (1988).

2. Appellees contend appellant was negligent per se in failing to

install a cutoff valve in apartment 1H as required by applicable City of Atlanta ordinances. Appellant counters this allegation by arguing that the code sections cited by appellees applied only to the owner and builder of the complex, and asserts also that the deposition testimony of its maintenance worker established that the unit did have a cutoff valve at the time of the incident at issue.

Violation of an ordinance governing installation of gas lines and cutoff valves constitutes negligence per se. *Atlanta Gas Light Co. v. Slaton*, 117 Ga. App. 317, 321-322 (3) (160 SE2d 414) (1968). While the parties disagree as to which ordinances apply here, each ordinance at issue required a cutoff valve. Also, although the parties likewise dispute who owed the duty to ensure that a cutoff valve was installed, where, as here, each ordinance is written in the passive voice the duty imposed is placed upon "the person in control of [the gas] outlet, whether he be the landlord, a tenant, or another." Id. at 321.

We agree with appellees that a factual dispute exists as to whether apartment 1H had the requisite cutoff valve. The testimony of appellant's agents on the subject is not so direct and unequivocal as to pierce appellees' allegations, see generally *Thacker v. Matthews Tuxedo*, 183 Ga. App. 474, 475 (359 SE2d 231) (1987), especially given that all witnesses agree no cutoff valve was found in the apartment after the explosion. Further, there remains a jury question regarding who was in control of the gas outlet and thus responsible for ensuring the valve was installed, as the record does not disclose whether the gas lines to apartment 1H had been repaired or altered since installation, or who installed the stove Edwards removed.

"While we are mindful that an intervening act of negligence [such as Edwards' apparent failure to secure the gas line properly] can insulate a prior act of negligence as the proximate cause of an occurrence we do not consider any conduct as shown by the evidence in this case to be such as to demand a holding, as a matter of law, that the violation of the city ordinance is not a factor in the proximate cause of the explosion, either alone or in combination with other factors. The purpose of the ordinance as a safety measure to prevent just what did happen in the present case is so obviously relevant to the consideration of proximate cause that it requires no further discussion." *Atlanta Gas Light*, supra at 322. Accordingly, we find the trial court properly denied summary judgment on the issue of negligence per se. See *Northwestern &c. Ins. Co. v. McGivern*, 132 Ga. App. 297, 301 (2) (208 SE2d 258) (1974).

3. Appellant also enumerates as error the trial court's denial of its motion to transfer the case to superior court. The record reveals that appellees originally filed their complaint in superior court but subsequently dismissed and then renewed the action pursuant to OCGA § 9-2-61 in state court. Appellant argues that under Uniform Superior

Court Rules 3.1 and 3.2, appellees were required to file their renewal action before the same court and judge as the prior action. We do not agree.

OCGA § 9-2-61 establishes an exception to the statute of limitation, but makes no reference to the subject of venue. Consequently, Georgia courts have long recognized that a renewal action may be brought in any court of the State in which jurisdiction is proper. *Hornsby v. Hancock*, 165 Ga. App. 543, 544 (301 SE2d 900) (1983). We read Rule 3.1, which governs assignment of cases among judges of a superior court, and Rule 3.2, which provides that all action involving the same subject matter shall be assigned to the same judge, to govern case assignment within a *particular* superior court, and do not agree with appellant that these rules limit a litigant's right to file an action in a *different* court which also has jurisdiction of the action.

*Judgment affirmed in part and reversed in part. Carley, C. J., and Deen, P. J., concur.*

## On Motion for Rehearing.

Appellant has moved this court to reconsider Division 2 of the instant opinion on the ground that because it is a management company and did not construct the apartment building, the City of Atlanta code provisions are inapplicable to it as a matter of law. Contrary to appellant's assertions, the record reveals that both at the time the apartments were built and also at the time the accident occurred, the City of Atlanta gas and heating, ventilation, and air conditioning codes required manual gas cutoff valves within apartments for gas appliances. Since we issued the above opinion, *Thompson v. Crownover*, 259 Ga. 126 (377 SE2d 660) (1989), was decided. We now recognize a state policy of prevention of unsafe residential housing, especially low income housing such as the apartment complex in the case sub judice. Landlords may be liable in tort for defective construction or failure to repair, which includes failure to exercise reasonable care to correct a condition that exists in "violation of the duties created by the housing codes *and other legislation.*" (Emphasis supplied.) Id. at 129 (2, 3). Accordingly, violation of the City of Atlanta ordinances at issue may be actionable in tort because, like housing codes, these provisions were adopted to "provide minimum standards and regulations to safeguard life, limb, health, property, and public welfare" of the City's citizens. See id. Although appellant argues it should not be liable for failure to comply with the applicable codes because the building was constructed by others, these code sections expressly apply to the alteration, repair, use, and maintenance of gas equipment and appliances, not just to initial construction, and appellant's maintenance employee testified that his duties included

repair and preventive maintenance of the gas lines within the apartments. Thus, there is a jury question as to whether appellant exercised reasonable care to correct any applicable code violations. Moreover, under the decision in *Thompson*, there is a question of fact as to whether the condition of the apartment gas line violated the local housing codes, which we cannot determine from the record before us, and whether appellant failed to exercise reasonable care to correct it. Id. at 129 (4).

DECIDED FEBRUARY 28, 1989 —
REHEARING DENIED MARCH 23, 1989 — 

*Lokey & Bowden, Glenn Frick, Sue K. Nichols*, for appellant.
*William Q. Bird, Long, Aldridge & Norman, John L. Watkins*, for appellees.