**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**December 30, 2019**

# In the Court of Appeals of Georgia

A19A2269. IN THE INTEREST OF C. B., a child.

McFADDEN, Chief Judge.

During their marriage, Winston and Tonya Barksdale had a child through in vitro fertilization (IVF). They used an egg (also called an oocyte) from an anonymous donor, which was fertilized with Winston Barksdale's sperm and then placed in the uterus of Tonya Barksdale, who gave birth to the child. Later, in divorce proceedings before the Superior Court of Fulton County, Winston Barksdale asserted that Tonya Barksdale was not entitled to custody of the child because she was not the child's biological, legal, or adoptive parent. Tonya Barksdale then petitioned for and obtained, in a separate proceeding before the Superior Court of Clayton County, an "order of parentage" declaring that she was the child's legal parent.

This is Winston Barksdale's discretionary appeal from the order of parentage and the trial court's denial of his subsequent motion for a new trial or, alternatively, to set aside that order. He argues that the trial court erred in issuing the order of parentage pursuant to the Option of Adoption Act, OCGA § 19-8-40 et seq., but we find that the Option of Adoption Act applies to this case and authorized the order. He argues that the Clayton County court should have transferred the case to the Fulton County court as part of the parties' divorce proceedings rather than exercising jurisdiction over the petition, but we find that the trial court's exercise of jurisdiction was appropriate. Finally, he argues he was not given proper notice of the order-of-parentage proceeding because Tonya Barksdale did not identify him as a respondent in her petition, but we find no abuse of discretion in the trial court's decision not to grant a new trial or set aside the order for this reason. So we affirm.

(1) *The Option of Adoption Act authorized the trial court to issue the order of parentage.*

The Option of Adoption Act provides a means of establishing the legal parentage of a child resulting from an embryo transfer, which is a "key component of IVF," *Patton v. Vanterpool*, 302 Ga. 253, 257 (806 SE2d 493) (2017), and which the Act defines as "the medical procedure of physically placing an embryo into the uterus

2

of a female." OCGA § 19-8-40 (3). The Act provides circumstances under which a "recipient intended parent may petition the superior court for an expedited order of adoption or parentage." OCGA § 19-8-42 (a). If the petition

> meets the criteria required by [the Option of Adoption Act], an expedited order of adoption or parentage shall be issued and shall be a final order. Such order shall terminate any future parental rights and responsibilities of any past or present legal embryo custodian or gamete donor in a child which results from the embryo transfer and shall vest such parental rights and responsibilities in the recipient intended parent.

OCGA § 19-8-43. The Act gives the trial court discretion to determine if the criteria for an order are met, providing that "[i]n the interest of justice, to promote the stability of embryo transfers, and to promote the interests of children who may be born following such embryo transfers, the court in its discretion may waive such technical requirements as the court deems just and proper." OCGA § 19-8-42 (d).

There is no dispute that this case involves an embryo transfer as that term is defined by OCGA § 19-8-40 (3). Both parties agree that an embryo — the donated egg fertilized by Winston Barksdale's sperm — was physically placed in Tonya Barksdale's uterus through a medical procedure. So we find no merit whatsoever in Winston Barksdale's argument that Tonya Barksdale did not receive an embryo.

3

And the evidence supported the trial court's finding that Tonya Barksdale was a "recipient intended parent" of that embryo. The Option of Adoption Act defines a "recipient intended parent" to mean "a person or persons who receive a relinquished embryo and who accepts full legal rights and responsibilities for such embryo and any child that may be born as a result of embryo transfer," OCGA § 19-8-40 (5), and it defines "embryo relinquishment" to mean "the relinquishment of rights and responsibilities by the person or persons who hold the legal rights and responsibilities for an embryo and the acceptance of such rights and responsibilities by a recipient intended parent." OCGA § 19-8-40 (2). The evidence in this case showed that the anonymous egg donor "knowingly relinquished all rights of any kind to the oocytes and to *any resulting embryo(s) or child(ren)*" (emphasis supplied), by signing a document to that effect. The donor also agreed that her eggs could be frozen and stored in an egg bank for use by anonymous recipients. And the evidence showed that both Tonya Barksdale (described as the "Recipient") and Winston Barksdale (described as her "Partner") signed an agreement with a fertility clinic in which they "agreed to a form of treatment known as oocyte (egg) donation in conjunction with oocyte freezing and thaw of cryopreserved oocyte, in vitro fertilization . . . , and

4

embryo transfer," using a donor egg provided by the egg bank. In that agreement, Tonya Barksdale stated:

> The purpose of the Treatment is to allow me, as the Recipient, to carry and deliver a child that I could not otherwise conceive. This allows me to experience pregnancy, childbirth, and motherhood through the use of egg donation. Chil(ren) conceived by this method will not have my genetic material but will have that of the egg donor and my Partner/sperm donor. Regardless of the outcome, however, I will be the parent of any child(ren) born to me as a result of egg donation and hereby accept all the legal responsibility required of a parent with regard to her child(ren).

As the above language makes clear, this provision of the agreement applied specifically to Tonya Barksdale "as the Recipient[.]" Other provisions of the agreement applied to both Tonya Barksdale as the Recipient and Winston Barksdale as the Partner.

Winston Barksdale argues that Tonya Barksdale does not meet the statutory definition of "recipient intended parent," asserting that the embryo she received was not a "relinquished embryo" because no embryo existed when the egg donor relinquished her rights. But as stated above, the donor relinquished her rights to any embryo or child that subsequently resulted from her donated egg. We must construe

5

the meaning of the term "relinquished embryo" both as it is used in the Option of Adoption Act's definitional section, OCGA § 19-8-40, and in the context of the Act as a whole. See generally *FDIC v. Loudermilk*, 305 Ga. 558, 562 (1) (826 SE2d 116) (2019) (in construing term in statute, we look to its meaning in the particular Code section in which it appears and in the context of the statute as a whole). So construed, it is clear that the provisions of the Act apply to children resulting from donated gametes (eggs or sperm) as well as those resulting from donated embryos. The Act provides that "[i]f the embryo was created using donor gametes, the sperm or oocyte donors who irrevocably relinquished their rights in connection with in vitro fertilization shall not be entitled to any notice of the embryo relinquishment, nor shall their consent to the embryo relinquishment be required." OCGA § 19-8-41 (b). The Act also provides that an order of adoption or parentage "shall terminate any future parental rights and responsibilities of any past or present legal embryo custodian *or* gamete donor in a child which results from the embryo transfer[.]" OCGA § 19-8-43 (emphasis supplied). So we are not persuaded by Winston Barksdale's argument that Tonya Barksdale was not an intended recipient parent of the embryo that resulted in the child in this case.

As a recipient intended parent, Tonya Barksdale could petition for an order of parentage under the plain language of the Option of Adoption Act. OCGA § 19-8-42 (a). That plain language does not support Winston Barksdale's argument that the Act only applies to adoptions by third parties of embryos that were not used by the persons undergoing IVF treatment. The trial court did not err in applying the Option of Adoption Act to resolve this case.

The trial court also did not err in issuing the order of parentage. As stated above, the Act gives the trial court discretion in determining whether the requirements for issuing such an order have been met, taking into account factors such as the interest of justice, the stability of embryo transfers, and the interests of children born following embryo transfers. OCGA § 19-8-42 (d). Tonya Barksdale presented evidence of the egg donor's written surrender of her rights to any embryo or child that resulted from IVF using her donated eggs. Contrary to Winston Barksdale's argument that Tonya Barksdale failed to present evidence of the necessary agreement under the Act, this written surrender, along with Tonya Barksdale's written agreement to accept the legal responsibilities of a parent to the child born to her using the donor's egg, authorized the trial court to issue the order of parentage. See OCGA § 19-8-42 (a) (recipient intended parent may present

7

evidence of surrender of rights in support of petition for order of parentage). There is no requirement that a recipient intended parent like Tonya Barksdale enter into a separate contract directly with an egg donor if the donor irrevocably relinquished her rights in connection with IVF, because under OCGA § 19-8-41 (b) the donor's consent to the specific embryo relinquishment is not required.

We also find no merit in Winston Barksdale's argument that Tonya Barksdale failed to show his consent, as a "legal embryo custodian," to the legal transfer of rights to the child. See OCGA § 19-8-41 (a). Winston Barksdale does not fall within the statutory definition of a "legal embryo custodian," which is "the person or persons who hold the legal rights and responsibilities for a human embryo *and who relinquishes said embryo to another person or persons*," OCGA § 19-8-40 (4) (emphasis supplied) because he did not relinquish his rights and responsibilities for the child in this case. More fundamentally, Winston Barksdale agreed in writing to the IVF procedure.

(2) *The trial court was authorized to rule on the petition.*

Winston Barksdale argues that the Superior Court of Clayton County should not have exercised jurisdiction over the petition for the order of parentage, but instead

8

should have transferred the proceeding to the Superior Court of Fulton County, where the parties' divorce proceeding was pending. We disagree.

The Option of Adoption Act requires a petition for an order of parentage to be filed "in the county in which any petitioner or any respondent resides." OCGA § 19-8-42 (b). Tonya Barksdale is the petitioner in this case, and she presented evidence that she resides in Clayton County, where she filed the petition. Contrary to Winston Barksdale's argument, the prohibition against a plaintiff prosecuting "two actions in the courts at the same time for the same cause of action and against the same party," OCGA § 9-2-5 (a), does not apply here, because the petition for an order of parentage under the Option of Adoption Act presents a different cause of action than the parties' divorce proceedings. Also contrary to Winston Barksdale's argument, the case assignment requirement in Uniform Superior Court Rule 3.2 does not apply here, because that rule "govern[s] case assignment within a particular superior court, and [does not] limit a litigant's right to file an action in a different court which also has jurisdiction." *Total Equity Mgmt. Corp. v. Demps*, 191 Ga. App. 21, 25 (3) (381 SE2d 51) (1989) (emphasis omitted).

(3) *The trial court did not err in rejecting Winston Barksdale's arguments regarding notice.*

9

Winston Barksdale argues that the trial court should have granted him a new trial or set aside the order of parentage because Tonya Barksdale fraudulently represented to the trial court that there was "no respondent–legal embryo custodian" in the proceeding, thereby depriving him of proper notice of the hearing on her petition.

The trial court found that Tonya Barksdale had not "made any fraudulent representation or material misrepresentations to [the c]ourt that would justify setting aside the [o]rder [of p]arentage." The trial court also found that Tonya Barskdale provided Winston Barksdale with proper notice of the action by taking "several steps, including notice via certified mail, to place Winston Barksdale on notice of the hearing[.]" As stated above, Winston Barksdale did not fall within the Option of Adoption Act's definition of "legal embryo custodian." See OCGA § 19-8-40 (4). And the record evidence authorized the trial court's finding regarding notice.

We also reject Winston Barksdale's suggestion that he is an adverse party in the order-of-parentage proceeding. That proceeding only concerns Tonya Barksdale's parental rights. Even if Winston Barksdale's status as a legal father could be an open question, but see OCGA § 19-7-20 (a) ("All children born in wedlock or within the usual period of gestation thereafter are legitimate."), nothing in the order of parentage

10

removes any of Winston Barksdale's parental rights. Furthermore, as the trial court properly made clear, the order of parentage does not affect any custodial issues between the parties. A proceeding under the Option of Adoption Act is not a legal battleground for custody issues. It is, as the Act states, a means of "promot[ing] the stability of embryo transfers, and . . . promot[ing] the interests of children who may be born following such embryo transfers[.]" OCGA § 19-8-42 (d).

Under the circumstances of this case, and given the trial court's broad discretion in issuing the order of parentage under the Act, see OCGA § 19-8-42 (d), we find no error.

*Judgment affirmed. McMillian, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*